MARY E. FRECHETTE, administratrix, *vs.* RALPH JOSEPH THIBODEAU, executor, & others.

Middlesex.     October 8, 1935. — March 5, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Equity Jurisdiction*, To modify decree. *Equity Pleading and Practice*, Decree. *Agency*, What constitutes.

The fact that a wife had had no knowledge as to processes which had been served at her place of abode and which had come into the hands of her husband, who intentionally gave no attention thereto, by reason of which a final decree in a suit in equity had been entered pro confesso, determining title to real estate against her, and a subsequent judgment at law in accordance therewith had resulted, was not sufficient to require an exercise of the discretionary power to reconsider the decree, nor entitle the wife to maintain a subsequent suit in equity against the succes-

sor in title to the plaintiff in the previous suit to enjoin him from pursuing his rights given in that suit and in the action at law, where it appeared that the real management of the property had been left by the wife in the hands of the husband, and that she was "content to leave all matters to" him.

BILL IN EQUITY, filed in the Superior Court on July 19, 1934.

The suit was referred to a master. An interlocutory decree confirming the master's report was entered by order of *Morton*, J., additional findings of fact were made by him, and a final decree dismissing the bill was entered by his order. The plaintiff appealed.

*D. F. McCormack*, for the plaintiff.

*J. Levy*, (*R. J. Thibodeau* with him,) for the defendants.

FIELD, J. Jean P. Norro brought a bill in equity in the Superior Court against Rose Alma Frechette and Alphonse L. Frechette, her husband, and two other defendants. No service was made on the other defendants and the bill was dismissed as to them. An interlocutory decree was entered reciting that the defendants Rose Alma Frechette and Alphonse L. Frechette had failed to enter their appearances and ordering that the bill be taken for confessed against them. Thereafter, on December 22, 1933, a final decree was entered adjudging that the real estate described in certain deeds was the property of the plaintiff Norro "as an absolute estate forever" and ordering the defendants Rose Alma Frechette and Alphonse L. Frechette, husband and wife, severally and jointly to reconvey such real estate to said plaintiff. No proceeding for review by way of appeal or exceptions was instituted. On April 21, 1934, an action of summary process to recover possession of the premises referred to in this decree was entered in the District Court by Jean P. Norro against Rose Alma Frechette and Alphonse L. Frechette. The defendants defaulted and judgment for the plaintiff for possession was entered May 4, 1934. Execution issued a few weeks later and is still outstanding. Jean P. Norro died May 7, 1934. His will was duly allowed. Ralph Joseph Thibodeau was appointed executor of said will, and by said will the real estate in

question was devised to Henri Cormier. On July 9, 1934, Cormier made a demand for possession of the premises.

Rose Alma Frechette (hereinafter referred to as the plaintiff) thereafter brought in the Superior Court this original bill in equity under the title "Plaintiff's Bill in the Nature of a Bill of Review and for Other Specific Relief" — it is now being prosecuted by the administratrix of her estate — against Ralph Joseph Thibodeau, executor of the will of Jean P. Norro, Henri Cormier and Alphonse L. Frechette, praying that she "be absolved from any observance of the injunction and orders" under the final decree in the previous suit, "that said final decree may be altered and modified as to enable the plaintiff to enjoy and own the said premises free and clear from any cloud upon the title thereto created by virtue of said final decree or any devise under said will," that the defendant Cormier "be restrained from enforcing the execution for possession of the said premises or from disturbing the plaintiff's occupation of said premises until further order of the court," and that the defendants Cormier and Thibodeau "be restrained from encumbering or alienating in any manner the premises herein referred to," and praying for general relief.

The case was referred to a master who made a report which was confirmed by an interlocutory decree. The judge to whom the case was submitted on the master's report made findings and rulings. A final decree was entered dismissing the bill and the plaintiff appealed therefrom to this court.

The decree was right.

1. The primary question for decision is whether the decree entered in the previous suit can be "altered and modified" in this suit in accordance with the prayer of the bill and the plaintiff be "absolved from any observance of the injunction and orders" thereunder.

"It is an established principle that after the entry of a final decree in a suit in equity the case is finally disposed of subject to such rights of appeal as the law affords, and the court has no further power to deal with the case except upon a bill of review," though there are certain exceptions

to this rule. *Kingsley* v. *Fall River*, 280 Mass. 395, 398. *Prenguber* v. *Agostini*, 289 Mass. 222, 223.

The plaintiff properly does not contend that this bill can be maintained as a bill of review. No error of law is apparent on the face of the record in the previous suit. And it is not alleged in the present bill, nor found by the master, that there is "new evidence not susceptible of use at the trial and coming to light after the decree," or "new matter arising after the entry of the decree." *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391, 397. *Sullivan* v. *Sullivan*, 266 Mass. 228, 229. The only exception to the rule, already stated, as to the power of the court to deal with a final decree, which requires consideration is the exception of a final decree entered by default where the defaulted defendant was deprived of an opportunity to make a defence to the suit through fraud, mistake, accident, negligence or mistake of his attorney or want of notice to such defendant of the pendency of the suit. See *Kingsley* v. *Fall River*, 280 Mass. 395, 398, and cases cited. See also *Crawford* v. *Nies*, 224 Mass. 474, 490. We need not consider whether, where the facts bring a case within this exception, relief by way of modifying a final decree entered in the previous suit can be obtained in a proceeding such as this, nor discuss the nature of the present proceeding, since we are of opinion that, on the merits of the case, apart from matters of form, the plaintiff is not entitled to a decree in the present suit modifying the decree entered in the previous suit. See *Crawford* v. *Nies*, 224 Mass. 474, 490; *Mackay* v. *Brock*, 245 Mass. 131, 133–134.

Review of a final decree on grounds included in this exception is discretionary and not matter of right. It must appear that justice requires such review. *Thompson* v. *Goulding*, 5 Allen, 81, 82. *Crawford* v. *Nies*, 224 Mass. 474, 490. *Mackay* v. *Brock*, 245 Mass. 131, 134. *Sullivan* v. *Sullivan*, 266 Mass. 228, 229. But since the case comes before us on a master's report we stand in the same position as did the trial judge (*Robinson* v. *Pero*, 272 Mass. 482, 484) and questions of discretion as well as of right are brought before us by this appeal. *Lakin* v. *Lawrence*, 195

Mass. 27, 28–29. *Mulrey* v. *Carberry*, 204 Mass. 378, 381.

The basis for review of the final decree in the previous suit, if any, is the fact that the plaintiff, a defendant in that suit, had no actual notice of the pendency of the suit and that her husband failed to notify her thereof or to take any other steps to protect her rights therein. The facts found show nothing else which could bring the case within the exception to the general rule.

These facts appear. The suit was brought against both the present plaintiff and her husband. Service was made upon them at their last and usual place of abode. The processes came into the hands of the husband. "He understood what they were," knew that he and his wife were "summoned to appear in court" and "that they were to appear the next day." The present plaintiff "was very ill." She "never saw the papers, never heard of them and knew nothing of the proceedings." Later a notice was received from the clerk's office notifying the present plaintiff "that the bill against her was taken *pro confesso*." This was received by her husband "and torn up without notifying" the plaintiff. Counsel for the plaintiff in that suit sent by registered mail a letter addressed "Rose Alma Frechette and Alphonse L. Frechette," containing a copy of the decree. It was received by the husband and destroyed. He told his wife nothing about it. The "first actual knowledge that she had of any of the legal proceedings" in the matter was obtained when she heard from her son of the demand by Cormier for possession of the premises. The plaintiff has "had absolutely no business experience" and was "content to leave all matters to her husband." Clearly on these facts the plaintiff's husband would not be entitled to a review of the decree.

We think, moreover, that justice does not require review of the decree at the suit of the plaintiff. At the time the previous suit was brought title to the property in question was in Norro, the plaintiff in that suit, and in Mrs. Frechette, the plaintiff in this suit, as joint tenants, subject to a mortgage given by them. This title in joint tenancy was

created by conveyance, through an intermediary, by Norro, who had purchased the property at a sale on foreclosure of a mortgage given by Frechette. The ground of the previous suit was that conveyance of the property in joint tenancy was procured by the fraud of Mr. Frechette and a third person. The defence which Mrs. Frechette, in substance, now seeks an opportunity to set up, according to the allegations of this bill, is that Norro purchased the property at the foreclosure sale under an oral agreement with Frechette that Norro would finance the purchase and later convey the property to Mrs. Frechette, that the purchase was financed by Norro by his giving a mortgage and paying the balance of her purchase price, that later the conveyance in joint tenancy was made in pursuance of the oral agreement followed by the execution by the joint tenants of the mortgage now on the property, and that Mrs. Frechette paid Norro the balance of the purchase price.

The findings of the master in part support these allegations of the bill of complaint. The property was purchased by Norro at the foreclosure sale and the purchase financed as alleged. The master finds, however, that prior to the foreclosure Frechette was apprehensive of losing his property as a result of anticipated tort actions, that "he and Norro talked it over and mutually decided that Norro would buy the property at the foreclosure sale and take title in his own name in order to protect his friend Frechette and also his own money which was invested in the second mortgage" on the property. "There was a clear understanding between Frechette and Norro that the latter was holding the property in his own name to protect Frechette and to preserve the property for him." In the transaction when the property was conveyed in joint tenancy "there was no fraud or deception practised by anyone. Mr. Frechette and Mr. Norro had certain arrangements in mind which were explained as well as they could do so." Mrs. Frechette was not present, but the deeds were sent to her. While it is found that she joined with Norro in giving a new mortgage sometime after the property was conveyed in joint tenancy — the mortgage given

by Norro personally being discharged — it is not found
that she ever paid anything for the property. When the
new mortgage was given, Mrs. Frechette "knew that both
signatures were necessary before the papers could pass."
Her husband, however, was present when the mortgage
was executed, and then discussed with Norro the amount
due him. Frechette was still indebted to Norro, though
the amount of his indebtedness had been reduced. Mrs.
Frechette had no income or property which she had not
received from her husband. There was no change in the
management of the property or in its use as a place of busi-
ness for Frechette and a home for himself and family.
He continued to pay the taxes and the interest on the
mortgage, though interest notices and tax bills were ad-
dressed to Norro and Mrs. Frechette and delivered on the
premises.

It well may be that on the facts found by the master the
plaintiff had a beneficial as well as a legal interest in the
property conveyed in joint tenancy as against her husband.
See *Lufkin* v. *Jakeman*, 188 Mass. 528, 532–533; *Pollock*
v. *Pollock*, 223 Mass. 382. But the findings show that the
transaction was carried through by him without active
participation therein by the plaintiff — except that as one
of the holders of legal title in joint tenancy her signature
to the mortgage was necessary — and that she was "con-
tent to leave all matters to her husband." So far as the
previous suit in equity was concerned the interests of the
plaintiff and of her husband were not adverse. It is a nat-
ural inference from the facts found that the plaintiff's hus-
band was authorized to act for her in connection with the
transaction, that this authority extended to acting for her
in the matter of the suit in equity, and that actual notice
to him of the proceedings served every practical purpose
of such notice to her. See *Simes* v. *Rockwell*, 156 Mass.
372; *Harvey* v. *Squire*, 217 Mass. 411, 414; *H. C. Girard
Co.* v. *Lamoureux*, 227 Mass. 277. Furthermore, the con-
duct of the plaintiff's husband was intentional. He had
knowledge of the facts of the transaction out of which the
previous suit grew and of the proceedings in such suit.

But he did not avail himself of the opportunity to make a defence in his own behalf. And his conduct with reference to the suit as against his wife cannot be said to have been negligent. At most, so far as disclosed by the findings of the master, it was the result of an error of judgment on his part. Moreover, the plaintiff in the previous suit did not obtain the final decree therein by fraud nor by reason of any mutual mistake of the parties thereto. See *Corbett v. Craven*, 196 Mass. 319, 321. He appears to have acted with full regard for the rights of the defendants in that suit. By reason of the death of Norro before the present suit was brought, the evidence of a material witness available when the previous suit was before the court was lost. In these circumstances justice does not require the exercise of the discretionary power of the court to review the final decree entered in the previous suit.

2. The plaintiff is not entitled to a decree restraining the defendant Cormier — the specific devisee of the property in question under the will of Norro — or the defendant Thibodeau — the executor of said will — from encumbering or alienating the property in question. The final decree in the previous suit conclusively established against the plaintiff that the property in question "is the property of . . . Jean P. Norro, as an absolute estate forever." For reasons already stated that decree cannot be reviewed. Those reasons extend to an attempt to review it by a bill in equity to enjoin action thereunder. See *Amherst College v. Allen*, 165 Mass. 178, 181; *Corbett v. Craven*, 196 Mass. 319, 320. No facts are found which, independent of a review of the final decree, entitle the plaintiff to the injunction sought.

3. The plaintiff is not entitled to a decree restraining the defendant Cormier "from enforcing the execution for possession of the said premises or from disturbing the plaintiff's occupation of said premises until further order of the court." So far as the injunction is sought as an incident of review of the final decree in the previous suit the matter is disposed of by what has been said already. And the facts found do not show that that defendant is not entitled

to possession of the premises as against the plaintiff. Nor do they show that that defendant has attempted or threatened to obtain service of the execution issued in the summary process action.

*Decree affirmed.*