DOROTHY TUCKER & others *vs.* DAVID C. BOWEN, executor.

Essex. February 9, 1968. — March 7, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Domicil. Probate Court*, Notice, Proof of will, Revocation of decree. *Will*, Allowance.

The facts justified a conclusion that a widow, who, after being away from her home in Barnstable County for a time, was unable to return to it because her doctor objected to her living alone and she could not find anyone to live with her, and moved to Essex County, where she lived in a convalescent home and a nursing home until her death some four years later, and closed her house in Barnstable County during that period, had her domicil in Essex County at the time of her death. [29–30]

Evidence warranted a finding that the proponent of a will, after listing three heirs of the decedent in his petition for probate, was grossly negligent in failing to ascertain the whereabouts of, or to give notice of the petition to, any of them. [31]

Discussion of revocation of decrees allowing wills. [31–34]

Where it appeared that in effect a decree allowing a will was entered by default by reason of a grossly negligent failure of the proponent to give notice of the petition for probate to certain heirs of the decedent, the Probate Court would have discretionary power to revoke the decree if it should further appear that such heirs had a meritorious case in opposition to allowance of the will. [34]

One having testamentary capacity is not precluded from making a valid will by the fact that his property is under conservatorship. [34]

The mere fact that the proponent of a will was the residuary legatee thereunder was no ground for disallowing the will. [34]

PETITION filed in the Probate Court for the county of Essex on November 9, 1966.

The proceeding was heard by *Costello*, J.

*Monto Rosenthal* for the petitioners.

*Richard L. Hull* (*Francis J. Vita* with him) for the respondent.

CUTTER, J. Dorothy Tucker and her sisters seek by petition (dated November 4, 1966) to have vacated a decree of the Probate Court in Essex County, entered July 21, 1966, appointing Bowen executor of an instrument (dated November 19, 1962) allowed as the will of Elizabeth T. Bitzer. Her mother was a sister of Bowen's mother. The father of

the Tucker sisters was a brother of Mrs. Bitzer's father. The Tucker sisters and Bowen thus were first cousins of Mrs. Bitzer, and are among her next of kin. The Tucker sisters allege (a) that Mrs. Bitzer had her domicil in Barnstable County, so that the Probate Court in Essex County had no jurisdiction, and (b) that Bowen improperly failed to give them notice of the petition for allowance of the will.

After hearing, a decree was entered in the Probate Court in Essex County, on May 10, 1967, revoking the decree of July 21, 1966, by which the will had been allowed and Bowen appointed as executor. The probate judge found that Mrs. Bitzer "at . . . her death was domiciled in . . . [Essex] County . . . but that . . . [Bowen] failed to exercise reasonable diligence in not serving" upon each of the Tucker sisters a copy of the citation on his petition for allowance of the will. Bowen appeals from the decree of May 10, 1967. The Tucker sisters appeal from that decree because of the finding that Mrs. Bitzer had her domicil in Essex County. The facts are stated on the basis of the probate judge's report of material facts. His findings are supported by the evidence, which is reported.

1. After 1949, Mrs. Bitzer, who had theretofore lived in Boston, made her home in Barnstable County. At South Dennis she lived with her husband, a retired Boston schoolteacher. After his death, Mrs. Bitzer's mother lived with her there until the mother's death in 1958. Mrs. Bitzer became lonely and talked of selling her house. She had no remaining relatives in the South Dennis area. Unsuccessful efforts were made to find someone to live with her.

In 1959, Mrs. Bitzer was committed to the Taunton State Hospital. She was there for six weeks. Bowen was appointed her temporary guardian late in 1959 or early in 1960. In May, 1960, he was appointed conservator of her property by the Probate Court in Barnstable County.

On January 11, 1960, Mrs. Bitzer was released from the State hospital and, pursuant to arrangements made by Bowen, went to a nursing home in Hyannis where she remained until February 9, 1962. She would have liked to

return to her house but was unable to find a suitable person to live with her. Her doctor objected to her living at her house alone.

Bowen lives in Rockport. He is a retired schoolteacher and administrator. When Mrs. Bitzer, who "complained that she was lonesome," expressed the wish that he would visit her in Hyannis more frequently, he said that this would be impossible. He did suggest, however, that she move to the Gloucester area. He investigated for her various possibilities, including a convalescent home, the Cardinal Cushing Villa in Gloucester. She visited it and "said she would like to stay there." In February, 1962, she moved to the Villa and remained there until April 2, 1965.

While Mrs. Bitzer was at the Villa, Bowen visited her approximately once a week. He and his wife took her to South Dennis on several trips. She considered various repairs and the disposal of some furniture.

In January, 1963, she told Bowen "that she knew she would never go back to live" in South Dennis. At her suggestion the water was shut off and the house closed. On another occasion she suggested that the house be sold. She last went to South Dennis in September, 1963. She then gave Bowen the keys to the house "because she would never be down there to live again." On one occasion when she returned to the Villa after a long day trip to South Dennis, she told Sister Dionisia, administrator at the Villa, that "she was very tired and . . . was glad to be home."

On April 2, 1965, Mrs. Bitzer was transferred to a Gloucester nursing home for bedridden cases. She died there on March 25, 1966.

The evidence permitted the probate judge's conclusion that, at the time of her death, Mrs. Bitzer had abandoned her domicil in South Dennis. Sister Dionisia "found her very clear mentally" and "a person who knew what she wanted." The judge was not plainly wrong in concluding that Mrs. Bitzer had capacity to form the intention to make her home in Gloucester for an indefinite period and to abandon all idea or hope of returning to her former place

of abode at South Dennis. On the evidence it could reasonably be found that she formed such an intention at least as early as January, 1963, when her South Dennis house was closed. The existence of the intention was a question of fact. See *Kennedy* v. *Simmons,* 308 Mass. 431, 434–435. Cf. *Connolly* v. *Phipps,* 283 Mass. 584, 588 (decedent never reached proposed home); *Mellon Natl. Bank & Trust Co.* v. *Commissioner of Corps. & Taxn.* 327 Mass. 631, 640 (decedent clearly intended, so far as legally possible, to retain an old domicil); *Sylvester* v. *Sylvester,* 330 Mass. 397, 399 (temporary move to be near work). The judge was not obliged to regard as controlling indications in documents, either executed prior to 1963 or not prepared by Mrs. Bitzer, that she lived in South Dennis, or various circumstances showing her continuing interest in South Dennis. The weight to be given to such factors (e.g. the description of her as "of South Dennis . . . and now temporarily of Gloucester" in her 1962 will, and various provisions of that will) was for the trier of the facts.

2. The citation on the petition for Bowen's appointment as executor set May 23, 1966, as the return day. It ordered service by publication in a Gloucester newspaper and "mailing postpaid or delivering a copy . . . to [among others] all known heirs-at-law." Dorothy Tucker had lived at the same address in Cambridge since 1951. One sister, Mrs. Thelma Tucker Robertson, lived in Burlington. A third sister, Mrs. Esther May Tucker Reed, had lived at the same address in Belmont for fourteen years. Each of them failed to receive any notice of Bowen's petition for appointment as executor but did receive on or about November 21, 1966, a copy of a citation on an account filed by Bowen as conservator of Mrs. Bitzer's property in the Probate Court in Barnstable County, by which court (as already indicated) he had been appointed conservator in 1960.[1] Bowen had

---

[1] The reported evidence shows that the conservator's accounts were prepared with the advice of a Hyannis lawyer, rather than by the Gloucester lawyer who made return of service on the citation concerning Bowen's appointment as executor. Bowen himself seems to have made out for his Gloucester lawyer envelopes addressed to the persons to be served in connection with his petition for appointment.

never met any one of the three Tucker sisters. Bowen knew, however, that Mrs. Bowen had been able to reach Mrs. Reed by telephone to tell her of Mrs. Bitzer's death and of the time set for her funeral (which Mrs. Reed was not able to attend).

Bowen first learned of the Tucker sisters' correct addresses from the guardian ad litem who was examining his account as conservator. Only one of the sisters, Dorothy Tucker, visited Mrs. Bitzer after she moved to South Dennis. Even this sister had not seen Mrs. Bitzer since before she was committed to the Taunton State Hospital. There appears to have been no substantial or active contact between Mrs. Bitzer and the Tucker sisters during any period when Mrs. Bitzer lived near the Bowens which would have been likely to come to Bowen's attention.

On the evidence the probate judge justifiably concluded that Bowen, when he listed the three Tucker sisters as heirs at law and next of kin on the petition for allowance of the will, "did not know . . . [their] addresses," and that "his failure to serve a citation on . . . [them] was not caused by deliberate or intentional fraud, but was on the mistaken view that where he did not know the addresses . . . publication would be sufficient." Nevertheless, in the circumstances, the failure so to address the letters to the persons to be served as to reach at least one of the Tucker sisters revealed an extreme lack of investigating resourcefulness. The judge could reasonably infer (because two of the Tucker sisters had lived at the same address for some years, and from Mrs. Bowen's ability to reach Mrs. Reed by telephone to inform her of Mrs. Bitzer's death and funeral) that examination of telephone books alone and inquiry of Mrs. Bowen would have disclosed the address of at least one of these sisters. Accordingly the judge was justified in deciding, as he did, that Bowen, in his failure to get a notice to Mrs. Reed, "did not exercise due diligence." Upon the evidence, the failure seems to us grossly negligent.

Under our cases, on the findings and the evidence, the probate judge was not required, as matter of law, to vacate

the decree appointing Bowen as executor and allowing probate of the will.  In *Donnell* v. *Goss*, 269 Mass. 214, 217, it was pointed out that such a decree "'. . . is in the nature of a judgment *in rem'* establishing the will against all the world, even if the parties interested received no notice."  See *Ryan* v. *Cashman*, 327 Mass. 677, 679.  Indeed, it has been suggested that "[i]t is next to impossible to have . . . [such a] matter reopened in . . . any circumstances."  See Newhall, Settlement of Estates (4th ed.) § 36, n. 6; see, however, § 28.  Certainly the Massachusetts cases hold that a decree allowing a will should not be reopened for reasons that would not either (a) warrant a bill of review in equity (see *Agricultural Natl. Bank* v. *Bernard*, 338 Mass. 54, 57, and cases cited; *W. M. Gullicksen Mfg. Co.* v. *MacNeil*, 347 Mass. 568, 573; see also *Stein* v. *Clark*, 326 Mass. 767, 769) or (b) permit discretionary relief on grounds such as those discussed in *Lovell* v. *Lovell*, 276 Mass. 10, 11.  See *Frechette* v. *Thibodeau*, 294 Mass. 51, 54.  We recognize that in Massachusetts the power to revoke decrees allowing wills is probably exercised less freely than in some other jurisdictions and only after a stronger showing than is required in those jurisdictions.  See Page, Wills (Bowe-Parker ed.) §§ 26.116–26.118, 26.120.  Nevertheless, revocation of decrees allowing wills has been permitted in Massachusetts.  For example, fraudulent presentation of a forged will has been recognized as justifying revocation of a decree allowing it.  *Parsekian* v. *Oynoian*, 299 Mass. 543, 545–547.  See *Buckingham* v. *Alden*, 315 Mass. 383, 387 (revocation of decree appointing a guardian because of the "withholding of material facts" by counsel).  See also *O'Sullivan* v. *Palmer*, 312 Mass. 240, 241.

Reasons other than fraud have been mentioned as justifying revocation.  In *Kennedy* v. *Simmons*, 308 Mass. 431, 432–433, this court said, "The Probate Court has power to correct or revoke a decree on account of fraud or mistake or for want of jurisdiction."  See *Boardman* v. *Hesseltine*, 200 Mass. 495, 498 (as to issues once "fully tried and regularly determined" further evidence should not be received to

show error in the original decision "in the absence of testimony tending to show the practice of fraud upon the court, or some accident or mistake or misunderstanding in the [original] proceedings . . . such as, in justice, should call for a revocation of the decree and a rehearing of the case"); *Sullivan* v. *Sullivan*, 266 Mass. 228, 229–230 (mistake or negligence of an attorney treated as ground for reopening a decree, obtained by default, in a domestic relations proceeding); *Zani* v. *Zani*, 325 Mass. 134, 135.

Even in a situation which might not justify a bill of review, relief (by revocation of what is in effect a default decree) may be granted in certain cases where this is necessary to afford opportunity to be heard on a meritorious or substantial issue (see *Zani* v. *Zani*, *supra*, at pp. 135–136). In *Lovell* v. *Lovell*, 276 Mass. 10, 11, the attorney for the widow of a decedent mailed a letter to the register of probate objecting to the allowance of the will and entering his appearance. He also informed the attorney for the proponent. A decree, entered by default, allowing the will was revoked by the probate judge. This court, on appeal, stated that "where a final decree has been entered on default and . . . [a party] has been deprived of an opportunity to . . . [be heard] on the merits, by accident or mistake or by the negligence of his attorney, the court has *discretionary power* to reopen the case in order to give opportunity for the presentation" (emphasis supplied). In remanding the *Lovell* case, however, this court stated that "the discretion of the court ought not to be exercised unless it appears in some way that" the position to be asserted, if the case is reopened, "is meritorious." It was pointed out (p. 12) that, "for aught that appears the proposed contest may be unfounded and without genuine support in evidence." Accordingly the decree of revocation was reversed and the probate judge was directed (p. 12) to consider whether the widow's proposed contest was "meritorious." See *Boxill* v. *Maloney*, 342 Mass. 399, 401, where revocation of a decree allowing a will after a considerable lapse of time was denied. In *McEndy* v. *McEndy*, 318 Mass. 775, 776–777, mere failure "through inadvertence

and mistake to appear and object," after service of a citation by publication and mailing, was not regarded as sufficient basis for revocation of a decree. See *Dolan* v. *Roy*, 286 Mass. 519, 520–521 (revocation of decree allowing account by reason of mistake in the probate registry); *Odde* v. *Field*, 297 Mass. 167, 170.

Discretionary relief (see *Frechette* v. *Thibodeau*, 294 Mass. 51, 54) by revocation of decrees allowing wills is unquestionably to be exercised with very great caution. We cannot say, however, that the probate judge, in the circumstances revealed by the evidence, had no discretion, at least within a reasonable time and before any demonstrated material change of position by interested persons, to revoke a decree allowed in effect by default after such gross failure (of a person with possibly adverse interests seeking to be appointed a fiduciary) to use diligence in giving notice. The principles of the *Lovell* case, 276 Mass. 10, seem to us to be applicable.

The probate judge's discretion, however, should have been exercised only after ascertaining that the Tucker sisters, in seeking revocation, had substantial and meritorious grounds to present against allowance of the will and against Bowen's appointment. The petition to revoke the decree alleges no facts (as opposed to conclusions) which suggest such grounds. Allegations that Mrs. Bitzer had been committed to Taunton State Hospital, and that she required a conservator of her property, do not amount to such grounds. She had been discharged from the State hospital and there are findings that Sister Dionisia who treated her until April, 1965, "found her very clear mentally." A person, whose property is under conservatorship, may execute a valid will, if testamentary capacity exists. See *Clifford* v. *Taylor*, 204 Mass. 358, 360–361; *McLoughlin* v. *Sheehan*, 250 Mass. 132, 136; *Lusis* v. *Kaminski*, 329 Mass. 766. The fact, standing alone, that Bowen was residuary legatee under Mrs. Bitzer's will, executed in November, 1962, presents no ground for refusing to allow the will. He appears from the evidence to have been a natural object of Mrs. Bitzer's bounty as one who, with his wife, had given her conscientious care.

Thus far the Tucker sisters have shown no substantial or meritorious grounds for opposing allowance of the will. Nevertheless, in the circumstances, we think that it is appropriate to follow essentially the course adopted by this court in the *Lovell* case, 276 Mass. 10, 12.

3. The decree of May 10, 1967, is reversed. The findings of fact already made are to stand. Mrs. Bitzer's domicil at her death is established as having been in Gloucester. Prior to the entry of any new decree, there is to be a hearing on the issue whether the Tucker sisters have a meritorious case in opposition to the allowance of the will. If they have no such case, the decree allowing the will is to stand.

*So ordered.*