RAYMOND A. YORKE vs. PAMELA RIPLEY YORKE.

Norfolk.  November 15, 1973. — May 8, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Contempt.  Probate Court,* Contempt proceeding.  *Estoppel.  Juris-
diction,* Divorce proceeding, Raising question of jurisdiction.
*Divorce,* Jurisdiction, Foreign divorce.  *Domicil.  Constitutional
Law,* Full faith and credit, Divorce.  *Res Judicata.*

The validity of a decree may be attacked on jurisdictional grounds
in a contempt proceeding for disobedience of the decree.  [237]
The facts did not show such "sufferance or cooperation" on the part
of a woman with respect to a decree of divorce obtained by her
husband as would bar an attack by her on the decree on jurisdic-
tional grounds.  [237-238]
The validity of a foreign decree of divorce obtained against a spouse
in a proceeding in which that spouse did not appear may be
attacked collaterally by that spouse.  [238-239]
Where it was warrantably found in a proceeding in a Massachusetts
Probate Court that a husband at all times was domiciled in Massa-
chusetts and that, although his wife went to Nevada and obtained
a "temporary residence" and a divorce there, she remained "a
domiciliary of Massachusetts," the Probate Court was not required
to give full faith and credit to the Nevada divorce decree, and that
decree did not deprive the Probate Court of jurisdiction over the
marriage relationship nor bar that court from granting the hus-
band a divorce.  [239]
A decree of a Probate Court dismissing "with prejudice" a petition
for contempt for disobedience of a previous decree did not bar on
the ground of res judicata a later petition for contempt based on
an alleged disobedience occurring after the dismissal of the earlier
petition.  [239]
In a contempt proceeding brought in a Probate Court by a former
husband of the respondent for disobedience by her of a provision
of a decree divorcing them whereby he was granted visitation
rights with respect to a child in her custody, a contention by her
that the petitioner was not the father of the child and so had no
right to visit the child constituted an attack on such provision of
the underlying divorce decree and was not open to the respondent.
[239]

PETITION for contempt filed in Probate Court for the county of Norfolk on March 10, 1972.

On remand by this court, the case was heard by *Fitz-patrick*, J.

*Stephen R. Wainwright* for the respondent.

*David Berman* for the petitioner.

HALE, C.J.   This is a petition for civil contempt of a Probate Court.   The respondent has appealed from a decree adjudging her in contempt and ordering her to pay $1,500 in counsel fees to the petitioner.   The evidence was reported, and there was a statutory report of material facts.   Being of the opinion that the record did not contain sufficient evidence to enable us to determine certain jurisdictional issues, we remanded the matter to the Probate Court for an evidentiary hearing on questions concerning the domicil of the petitioner and of the respondent at various material times.   The court was directed to make, and now has made, findings of fact on those points and has reported all the evidence on which its findings are based.[1]   See G. L. c. 215, § 9; G. L. c. 231, §§ 124, 125 and 144; G. L. c. 211A, §§ 10 and 13; *Harrod* v. *Rigelhaupt*, 1 Mass. App. Ct. 376, 377 (1973).

We summarize the facts.   On July 18, 1969, the petitioner, Raymond A. Yorke (Raymond), married the respondent, Pamela Ripley (Pamela), in Massachusetts. Pamela left Raymond in September, 1969.   On October 21 of that year Raymond filed a libel for divorce in the Probate Court for the county of Norfolk.   Pamela's address was given on the libel as "of parts unknown"; service on Pamela was made by publication and mailing. G. L. c. 208, § 8.

On November 12, 1969, Pamela instituted divorce proceedings against Raymond in Nevada.   Raymond was personally served in Massachusetts but did not appear,

---

[1] Because of the retirement of the judge by whose order the contempt decree was originally entered, all proceedings pursuant to the remand were conducted by a different judge.

either personally or through an attorney, in the Nevada proceedings. On December 12 the Nevada District Court granted Pamela a decree of divorce. Pamela remained in Nevada and there went through a marriage ceremony with one Frederick W. Carson on January 10, 1970. On March 5, 1970, Pamela gave birth to a son in Nevada; the child was named on the Nevada birth certificate as Mark Ripley Carson (Mark). Pamela suffered complications following the birth of the child. She returned to Massachusetts in May of 1970 and resided at her parents' home. She obtained part time employment here in June, 1970.

On July 17, 1970, Raymond's motion to amend his libel to include Mark as a child born to Pamela and himself was allowed, and a decree of divorce nisi from Pamela was entered in the Massachusetts proceedings. Custody of the child, named in the decree nisi as Mark Yorke, was given to Pamela, and Raymond was awarded visitation rights. Pamela did not appear at those proceedings.

Raymond brought a petition for contempt against Pamela in September, 1970, alleging that she had refused to allow him to visit Mark. Pamela retained counsel, who filed a special appearance to contest the court's jurisdiction. Before any adjudication on the merits Raymond's petition was ordered "dismissed, with prejudice, at the request of the parties" on October 14, 1970.

The decree nisi became absolute on January 18, 1971. Raymond visited Mark during 1971, but Pamela refused to permit him to see the child after December of that year. On March 10, 1972, Raymond brought the present petition for contempt against Pamela. Counsel for Pamela again filed a special appearance to contest the court's jurisdiction. The probate judge found Pamela in contempt and ordered her to pay Raymond $1,500 in counsel fees.

Pamela has appealed from that decree.[2]   She argues
(1) that Massachusetts lacked the requisite jurisdiction
over her marriage to Raymond as a result of her Nevada
decree; (2) that as a result of the dismissal of the first
contempt petition "with prejudice", the issue of contempt
was res judicata; and (3) that Mark's birth certificate,
admitted in evidence in the contempt proceedings, estab-
lished that Mark was not Raymond's child.   Raymond
argues (1) that the Nevada court was without jurisdic-
tion to grant Pamela a divorce and that Pamela is bound
by the Massachusetts divorce decree; (2) that the dismissal
of his earlier petition for contempt was not res judicata
on the issue of a later committed contempt; and (3) that
the Nevada birth certificate was improperly admitted in
evidence and did not, in any event, establish Mark's
parentage.

1. We first consider the jurisdictional questions.   If,
by reason of Pamela's Nevada divorce decree, the Massa-
chusetts Probate Court lacked jurisdiction to enter the
decree of divorce in which visitation rights were awarded
to Raymond, then the Massachusetts decree was a
nullity and Pamela could not be held in contempt thereof
unless by some rule of law she was estopped from raising
the question of jurisdiction.   In essence, both Raymond
and Pamela are challenging the jurisdiction of the court
which granted the other an *ex parte* divorce.   The
general rule that an appeal from a contempt decree will
not ordinarily call into question the validity of the under-
lying decree which is the subject of the contempt (*Gold-
stein* v. *Goldstein,* 350 Mass. 762 [1966]) does not bar an
attack on the underlying decree which is based on juris-
dictional grounds. *State Realty Co. of Boston, Inc.* v.
*MacNeil,* 341 Mass. 123, 124 (1960).   On these facts it
cannot be said that Pamela's conduct with respect to the

_____

[2] Pamela also appealed from the denial of her motion that the
Probate Court "sua sponte" vacate its decree of divorce.   She has not
argued that issue in her brief, and we deem it waived.   Rule 1:13 of
the Appeals Court, 1 Mass. App. Ct. 889 (1972).

Massachusetts decree amounted to such "sufferance or co-operation" as to bar a jurisdictional challenge for that reason.   Compare *Dennis* v. *Dennis,* 337 Mass. 1, 4 (1958).

It is well settled that when one spouse has obtained a decree of divorce in another State and the other spouse has not appeared in the foreign proceedings, the non-participating spouse may collaterally attack the validity of the foreign decree. *Williams* v. *North Carolina,* 325 U. S. 226, 227-239 (1945). *Heard* v. *Heard,* 323 Mass. 357, 363 (1948). It is also well settled that an appearance by the stay-at-home spouse in the foreign proceedings will ordinarily foreclose that spouse from subsequently attacking the foreign decree collaterally. *Sherrer* v. *Sherrer,* 334 U. S. 343, 348-356 (1948). *Coe* v. *Coe,* 334 U. S. 378, 384 (1948). *Chittick* v. *Chittick,* 332 Mass. 554, 558 (1955). See *McCarthy* v. *McCarthy,* 361 Mass. 359 (1972). In the case at bar neither spouse appeared in connection with the other's divorce proceedings. Thus, the divorce of each is open to collateral attack by the other.

Attack is made by Raymond on Pamela's purported acquisition of a Nevada domicil. It is well settled that the determination of domicil is ordinarily one of fact. *Wright* v. *Boston,* 126 Mass. 161, 163 (1879). *Tucker* v. *Bowen,* 354 Mass. 27, 30 (1968). The probate judge on remand found that Raymond was at all times domiciled in Massachusetts and that at the times Pamela instituted proceedings in Nevada and the Nevada decree was entered "Pamela had a temporary residence in Nevada but was a domiciliary of Massachusetts." Those findings were clearly warranted, if not required, by the evidence. The judge quite properly inferred from the evidence that Pamela never intended to reside in Nevada indefinitely and apparently concluded that she returned to Massachusetts as soon as it was medically safe for her to do so following the birth of Mark. Contrast *Barnard* v.

*Barnard,* 331 Mass. 455, 457 (1954), with *Shain* v. *Shain,* 324 Mass. 603, 606-607 (1949).

We hold, therefore, that the Massachusetts Probate Court was not divested of jurisdiction over the marriage relationship by reason of the Nevada decree purporting to grant Pamela a divorce. As Pamela never acquired a bona fide Nevada domicil, the Probate Court was not required to give full faith and credit to the Nevada decree.

2. Pamela argues that as a result of the dismissal "with prejudice" of Raymond's first contempt petition the issue of contempt is res judicata. The short answer to that contention is that the dismissal of the earlier petition for contempt was res judicata only with respect to acts which had occurred during the period of time encompassed by that petition. The original report of material facts discloses that the conduct constituting the contempt for which Raymond's second petition was brought did not take place until late in 1971, more than a year after the dismissal of Raymond's first petition. Clearly, the cause of action underlying the second contempt petition was different from that underlying the first. See *Gerrish* v. *Gerrish,* 249 Mass. 219, 222 (1924); *Buyarsky, petitioner,* 322 Mass. 335, 339 (1948).

3. Pamela also maintains that the copy of Mark's Nevada birth record admitted in evidence at the contempt proceedings establishes that Raymond is not Mark's father and that Raymond therefore has no legal right to visit the child. In our opinion, arguments concerning Mark's paternity cannot properly be raised in the context of a contempt proceeding. Such arguments constitute further attempts by Pamela to call into question the validity of the underlying decree upon which the contempt petition was based. *Goldstein* v. *Goldstein,* 350 Mass. 762 (1966).

*Decree affirmed.*