RONALD RICHMOND & others[1] *vs.* JANE RICHMOND
& others.[2]

Suffolk.     May 7, 1976. — August 9, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Probate Court,* Revocation of decree. *Will,* Allowance. *Pleading, Civil,* Fraud. *Massachusetts Rules of Civil Procedure. Judge.*

In a petition in a Probate Court seeking to vacate a decree allowing a will, the contestants' allegations of "fraud upon the Court" were required to be stated with particularity. [766-767]

In a petition in a Probate Court seeking to vacate a decree allowing a will, allegations that the judge who allowed the will and the proponent's counsel enjoyed a "direct and continuing financial relationship" which "depend[ed] in part upon the outcome of the litigation" lacked sufficient particularity to overcome a demurrer [767-768]; in the circumstances, this court afforded the contestants the opportunity to amend their petition [768-769].

PETITION filed in the Probate Court for the county of Suffolk on July 30, 1975.

---

[1] Evelyn Shein and Morton S. Barron.

[2] Richard J. Richmond, executor, and Edward Chesler, conservator.

The case was heard by *Warner*, J., on demurrers and was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*James D. St. Clair* (*Timothy H. Gailey* with him) for Richard J. Richmond, executor.

*Kevin P. Curry* (*William Lender* with him) for Jane Richmond & another.

*Lawrence R. Cohen* for Ronald Richmond & others.

BRAUCHER, J.   Nearly three years after the allowance of a contested will, and after the death of the judge, the contestants filed a petition to revoke the decree, alleging ethical improprieties on the part of the judge and of certain counsel for the proponent. We are asked to decide whether the contestants' allegations are sufficient to withstand demurrers, and we hold that they are not. But the contestants are to be given an opportunity to amend their petition.

Maxwell Evans Richmond died on October 22, 1971, and his brother, Richard J. Richmond, was appointed administrator of his estate on October 26, 1971. On January 7, 1972, the brother filed a petition for probate of the will, and after a four-day trial on the issue of forgery, the judge found that the will was genuine and allowed it on August 15, 1972. Appeals by the contestants were withdrawn in November, 1972.

On July 30, 1975, the contestants filed a petition to revoke the decree allowing the will, claiming that conduct of the judge and counsel "constituted a fraud upon the Court, was prejudicial to the administration of justice, and operated to deprive petitioners of their day in Court." A second judge overruled the demurrers of the proponent and the other beneficiaries of the will, and reported the matter to the Appeals Court pursuant to G. L. c. 215, § 13. We allowed the contestants' application for direct appellate review.

We summarize the allegations of the petition. The trial judge and two of the lawyers for the proponent "concealed from" the contestants "the existence of a direct and con-

tinuing financial relationship between them, depending in part upon the outcomes of the litigation, which has only recently come to petitioners' attention ...." By 1969 one of the lawyers "had achieved a position of virtual control over all aspects, excepting educational, of the operations" of a certain school. In August, 1971, that lawyer "prevailed upon the stockholders" of the school to appoint as trustees the other lawyer (his nephew) and the judge. The judge was paid, at the behest of the first lawyer, $12,000 a year for his part time service as trustee. On May 22, 1972, the two lawyers filed appearances for the proponent of the Richmond will, and trial without jury on the issue of forgery was then scheduled to commence before the judge on June 28, 1972. Neither lawyer had previously represented the proponent or the decedent; they were specially retained by the proponent and his regular counsel, who had long represented the decedent.

"At no time was the ongoing financial relationship" disclosed to the contestants or their counsel. "This was not oversight because" a meeting of the trustees of the school occurred pursuant to notice on June 29, 1972, during the trial. The two specially retained lawyers billed the estate $100,000 for their services, and proponent's regular counsel received $70,000 in partial payment for his services from October, 1971, to August, 1972. There was expert testimony that the purported will was an "amateurish, palpable forgery," and two witnesses who testified on depositions taken in Philadelphia to the execution of the will were indicted for perjury in July, 1975, in Philadelphia on the basis of handwriting analyses. In August, 1973, the first lawyer "procured the appointment" of the judge as dean of the faculty of the same school at an annual salary of $20,000.

The school is in c. 11 bankruptcy, 11 U.S.C. §§ 701-799 (1970), and in September, 1974, brought an action charging the two lawyers, the judge and others with "intentional wasting of the school's assets." One of the two lawyers (the nephew) filed an appearance as counsel for the judge and an answer on his behalf. A motion to impound the

complaint recites that it "contains facts which may be confidential." The contestants are aggrieved by the decree allowing the will, by the "knowing and deliberate retention" by proponent's counsel "of trial counsel who enjoyed an ongoing and direct pecuniary relationship with the trial judge, and by the deliberate and purposeful concealment of that relationship" by the two lawyers and the judge. "The foregoing evidence, all newly discovered, of fiscal camaraderie between proponent's counsel and the trial judge, undisclosed to petitioners in violation of the Canons of Ethics and Disciplinary Rules for lawyers established by the Supreme Judicial Court and the Canons of Judicial Ethics, has operated to deny your petitioners of the impartiality and the appearance of impartiality to which they were entitled under Article 29 of the Declaration of Rights of the Commonwealth of Massachusetts."

1. *Jurisdiction and procedure.* The matters reported under G. L. c. 215, § 13, are the interlocutory orders overruling the demurrers of the proponent and the other beneficiaries of the will. The reports bring to us the question whether the petition states a claim upon which relief can be granted. They do not bring to us the questions, raised by answers and motions, whether the petition is barred by compromise, release, consent, laches or lapse of time. We therefore do not consider the arguments made on these questions.

The power of the Probate Court to vacate a decree allowing a will was discussed at length in *Tucker* v. *Bowen,* 354 Mass. 27, 31-34 (1968). That power derives from the civil law through the ecclesiastical courts of England, and was kept distinct from jurisdiction at common law and in equity. See *Waters* v. *Stickney,* 12 Allen 1, 3-4 (1866). The proceeding in the Probate Court, therefore, was not one "seeking equitable relief" under Mass. R. Civ. P. 1, 365 Mass. 730 (1974), and was not subject to those rules. But in such cases we have looked by way of analogy to the law governing writs of review at common law and bills of review in equity. See *Tucker* v. *Bowen, supra* at 32; *Parsekian* v. *Oynoian,* 299 Mass. 543, 545 (1938).

The completeness and formality of the pleading in an ordinary action at law have not been required in petitions to vacate judgment. *Herlihy* v. *Kane,* 310 Mass. 457, 460 (1941). Before the "sweeping overturn of attitudes toward pleading" represented by the 1974 rules, however, no intendment in favor of the pleader could be made upon a demurrer, and pleadings were generally to be construed against the pleader. See *Charbonnier* v. *Amico,* 367 Mass. 146, 152 (1975). Even under the new rules "circumstances constituting fraud" are to be "stated with particularity." Mass. R. Civ. P. 9 (b). Cf. *Moskow* v. *Boston Redevelopment Authority,* 349 Mass. 553, 561-564 (1965), cert. denied, 382 U.S. 983 (1966); *Regional Land Corp.* v. *McLaughlin,* 334 Mass. 276, 281 (1956). We think the same principle applies to a "fraud upon the Court."

2. *Disqualification.* There is no claim here of personal bias or prejudice against the complaining parties or their counsel, as in *Lena* v. *Commonwealth,* 369 Mass. 571, 573-576 (1976), and *Police Comm'r of Boston* v. *Municipal Court of the W. Roxbury Dist.,* 368 Mass. 501, 507-509 (1975). Nor is there a claim that the judge had a financial interest in the subject matter in litigation, as in *Matter of Troy,* 364 Mass. 15, 62 (1973), and *Northampton* v. *Smith,* 11 Met. 390, 395-396 (1846). It is not claimed that the judge was too closely associated with an opposing party, as in *Beauregard* v. *Dailey,* 294 Mass. 315, 324-325 (1936). The claim is that the judge had a relationship with counsel for an opposing party. Cf. *Matter of Troy,* 364 Mass. 15, 60-62, 73 (1973); *Frade* v. *Costa,* 342 Mass. 5, 7-8 (1961); *Commonwealth* v. *Leventhal,* 364 Mass. 718, 724-726 (1974) (relationship with victim of crime); *Commonwealth* v. *Keigney,* 3 Mass. App. Ct. 347, 350-351 (1975) (same); *Matter of DeSaulnier (No. 4),* 360 Mass. 787, 812 (1972) (relationship with bail bondsmen).

We have no doubt that on the facts alleged it would have been proper for the judge to disqualify himself from hearing the will contest. *Williams* v. *Robinson,* 6 Cush. 333, 335 (1850). Indeed, if before trial the point had been called to his attention in the terms now alleged, it might

well have been his duty to withdraw. See S.J.C. Rule 3:25, Canon 2(B), Canon 3(C)(1), effective January 1, 1973, 359 Mass. 842, 844 (1973); cf. *Lena* v. *Commonwealth,* 369 Mass. at 577. But discretionary relief by revocation of a decree allowing a will is to be exercised with very great caution. *Tucker* v. *Bowen,* 354 Mass. at 34. After trial and final judgment, the policy against reopening the matter because of a supposed error in the determination of facts is a strong one. *Stephens* v. *Lampron,* 308 Mass. 50, 52-53 (1941).

The allegation of a "direct and continuing financial relationship" between judge and counsel, "depending in part upon the outcome of the litigation," lacks the required particularity. Other allegations are that stockholders of a school had appointed the judge and one of the lawyers as trustees, that they were serving together at the time of trial, and that the judge was paid for his service. It is not alleged that the school was not a charitable institution. See *Matter of DeSaulnier (No. 4),* 360 Mass. at 812; S.J.C. Rule 3:25 Canon 5(B), 359 Mass. 848 (1973); cf. G. L. c. 268A, § 6. There is nothing to show how the "continuing financial relationship" depended "in part upon the outcome of the litigation." It is alleged that the other lawyer "had achieved a position of virtual control" over the school, that he had "prevailed upon the stockholders" to appoint the judge, and that the payments to the judge were made at the other lawyer's "behest"; but no specifics are shown as to the "virtual control," how he "prevailed," or the "behest." Most important, and we think fatal, is the absence of any allegation that the judge knew of the control, the prevailing, or the "behest." Cf. *Commonwealth* v. *Leventhal,* 364 Mass. at 725. The demurrers should therefore have been sustained.

3. *Disposition.* As in *Charbonnier* v. *Amico,* 367 Mass. at 153-154, we cannot say that when the contestants' counsel reexamine the facts and law they will be unable to state a claim. We think it best to afford them an opportunity to reframe their petition. G. L. c. 231, § 52, as amended by St. 1975, c. 377, § 86. The orders overruling the demurrers

are reversed and the contestants are to have leave to file an amended petition in the Probate Court within forty days of the date of the rescript. The proponent and beneficiaries of the will may then make appropriate response.

*So ordered.*