ANNIG PARSEKIAN *vs.* MESROB OYNOIAN, executor.

Worcester.   September 27, 1937. — March 1, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Probate Court*, Jurisdiction, Vacation of decree. *Public Policy*. *Fraud*.

Public policy did not forbid revocation of a decree of a probate court which without a contest had allowed a will presented for allowance by one named therein as executor and legatee where it appeared that the proponent knew that the instrument was a forgery and that evidence supporting it was false, and where a petition for revocation was presented by a next of kin with due expedition after he learned of the fraud on the court.

PETITION, filed in the Probate Court for the county of Worcester on July 24, 1936.

A demurrer was sustained by *Atwood*, J. The petitioner appealed.

*C. H. Eden*, for the petitioner.

*H. R. Sher*, for the respondent.

RUGG, C.J. In June, 1935, Mesrob Oynoian presented a petition to the Probate Court praying for the allowance of the will of Garabed Parsikian, late of Northbridge, and the appointment of himself as executor. One of the heirs at law and next of kin of the deceased named in said petition was Annig Parsikian, described as a resident of Aleppo,

Syria, and as the sixth cousin of the deceased. Only two other heirs at law and next of kin were named therein, one described as sixth cousin and the other as distant cousin. Citation issued on that petition on June 15, 1935, returnable on September 3, 1935, to be served by publication in the Milford Daily News and by mailing, postpaid, or delivering a copy thereof to all known persons interested in the estate seventy days, at least, before the return day. The citation was served by advertising and mailing. Decree was entered on October 4, 1935, allowing the will and appointing as executor Mesrob Oynoian who was also a legatee under the will.

On July 24, 1936, Annig Parsekian filed a petition in the Probate Court alleging that she was the first cousin and the person of nearest degree of kindred to the deceased; that she was aggrieved by the decree of October 4, 1935, whereby the will of the deceased was allowed; that said will is a forgery, was never signed nor executed by the deceased; that said deceased was not present when said will was executed or when the witnesses signed the will; that said Mesrob Oynoian in furtherance of a conspiracy and scheme to defraud, appeared before the court, presented the will, well knowing it to be forged, and filed the petition for the allowance of the forged will and the appointment of the executor; that, in furtherance of a scheme and conspiracy to defraud, one of the witnesses to the will, Edward Ohanian, made statements under oath to the trial judge that the will was properly executed, knowing at the time that the statements were not true and making them for the purpose of causing the judge to allow said will and to appoint the executor, which facts the said Mesrob Oynoian well knew; that the judge, relying on said statements, allowed the will and appointed Mesrob Oynoian executor by decree of October 4, 1935; and that through the fraud and conspiracy of Mesrob Oynoian and the witnesses to the will in knowingly presenting the forged will and in failing to tell the truth as to the forgery, imposition was consciously practised on the court and the decree of October 4, 1935, was entered because of the fraud practised on the court by

the persons named and in the particulars specified and was entered by mistake. There are further allegations to the effect that Annig Parsekian knew nothing of the forgery of the will until long after it had been allowed by the decree of October 4, 1935, and that she then acted with due expedition to protect her rights and to undo so far as possible the fraud practised upon the court. There are appropriate prayers that the decree of October 4, 1935, may be revoked, cancelled, vacated and set aside and full relief be granted.

Mesrob Oynoian, as executor, demurred to this petition to vacate, revoke and set aside the decree of October 4, 1935, on the theory that that decree was duly entered; that there was compliance with all requirements of statutory and common law, and a hearing as to the allowance of the will; and that the petition cannot be maintained as matter of law. By decree of December 29, 1936, the demurrer was sustained and the petition was dismissed. The appeal of Annig Parsekian brings the case here. All the allegations of the petition must be taken to be true for the purposes of the present proceeding.

There is nothing in the record to indicate that there was any contested hearing as to the allowance of the will, or that any issue was raised as to its forgery. Several attorneys appeared for legatees under the will but there is nothing to show that any heir at law or next of kin of the deceased appeared or was represented.

In dealing with a case similar to the one now under consideration, it was said in *Crocker* v. *Crocker*, 198 Mass. 401, 404, 405: "The general power of the Probate Court to deal with subjects like that now before us and to revoke its decrees for good cause was very fully considered in *Waters* v. *Stickney*, 12 Allen, 1. This power is analogous to that of courts of common law to issue writs of review, and of courts of equity to entertain bills of review. It is to correct mistakes of fact or of law." There can be no doubt of the jurisdiction of the court to consider such a petition. *Goss* v. *Donnell*, 263 Mass. 521, 524. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 153. In the case at bar the fraud on the Probate Court consisted primarily

in the preparation of the forged instrument purporting to be a will and the filing of it in court with a petition for its allowance in the usual form. That is a course of flagitious conduct different in kind from the presentation of perjured testimony upon the trial of a case. It falsifies the very records of the court. It is repulsive to every idea of justice that a forged instrument should be declared to be genuine by a decree of court. It is utterly foreign to correct conceptions of administration of law that such an imposition upon the courts should not be corrected. This situation is not covered by the principle established by the leading case of *Zeitlin* v. *Zeitlin*, 202 Mass. 205, 207, that "It is in the interests of justice that, after a trial and final judgment in a case, the matters heard and adjudicated shall not be opened for a further hearing because of a supposed error in the determination of facts by the tribunal that heard the evidence. A contention that some part of the material testimony was false might be made with plausibility in a large proportion of the cases that are tried. A contention that the prevailing party knowingly gave or procured false testimony, upon an issue involved, might be made and strongly supported in a great many cases. It is against public policy to open cases on no other ground than this." *Boyd* v. *Boyd*, 226 Mass. 542. *Renwick* v. *Macomber*, 233 Mass. 530, 534. *Wright* v. *Macomber*, 239 Mass. 98. *Donnell* v. *Goss*, 269 Mass. 214, 217. No public policy intervenes to forbid the revocation of a decree whereby a forged document has been declared to be genuine by the intentional, fraudulent efforts of a party receiving financial gains by its terms in the circumstances here disclosed.

There was before the court in *Fuller* v. *Fuller*, 261 Mass. 82, a petition for the revocation of a decree of a probate court allowing the will of a deceased person on the ground that the deceased was of unsound mind and was fraudulently induced to make the will by his son. It was there said, at page 85, that the ruling excluding evidence of the testamentary capacity of the deceased "except as such capacity or lack of it was within the knowledge of the petitioner for probate or of the executors, was correct." The case at bar

falls within the exception there stated. In *Raymond* v. *Cooke*, 226 Mass. 326, a petition was maintained to revoke a final decree of adoption secured by the fraud of the adopted son who exercised undue influence over a weak-minded adopting parent. In the case at bar the perjured testimony was merely ancillary to the main fraud of presenting for allowance the forged will. The forging of the will was within the knowledge of Mesrob Oynoian; he profited by its provisions and he was the one actually pressing the court for the allowance of the instrument as a will and practising the fraud upon the court. The case of *Sampson* v. *Sampson*, 223 Mass. 451, was a petition to set aside a decree absolute for divorce on the ground of fraud. It was there said (page 462) in words peculiarly applicable to the facts alleged in the case at bar: "This presents a case of legal fraud quite outside and beyond the intentional introduction of false testimony. It discloses substantial grounds for relief not only to prevent a wrong to the present petitioner but to frustrate an attempt to make the court an instrument of oppression in aid of a surreptitious sham founded on wrongful artifice. In such case relief will be afforded."

> *Decree sustaining demurrer and dismissing petition is reversed.*