EDWARD STEPHENS & another *vs.* BERTHA STEPHENS LAMPRON, executrix, & others.

Middlesex.    November 12, 1940. — January 3, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Probate Court*, Vacation of decree.

A petition to vacate a decree of a Probate Court allowing a will properly was dismissed upon demurrer where its averments were in substance that one who was the principal beneficiary under, and the executor named in, the will had falsely testified that he had no knowledge of the whereabouts of a potential witness against proof of the will, with further averments as to fraud, combination, conspiracy and contempt of court as a result of which the witness was "secreted" and the contestants lost the benefit of important and decisive testimony.

PETITION, filed in the Probate Court for the county of Middlesex on December 19, 1939.

Demurrers were heard and sustained by *Beane, J.*, and the petition was dismissed,

*L. B. Newman,* for the petitioners.

*P. F. Spain,* (*G. I. Kellaher* with him,) for the respondents.

QUA, J. This is a petition to the Probate Court to vacate a decree of that court allowing the will of Maria Alice Stephens, late of Somerville. Several respondents appeared and demurred. The petitioners now appeal from decrees sustaining the demurrers and dismissing the petition. The question is whether the allegations of the petition are sufficient as a basis for vacating the original decree admitting the will to probate.

These allegations are in substance as follows: The present petitioners contested the allowance of the will on the grounds of lack of proper execution, want of mental capacity of the testatrix, and undue influence of the petitioners' sister, Bertha Stephens Lampron, the executrix and principal beneficiary under the will. At the hearing on the probate of the will Bertha Stephens Lampron falsely and fraudulently testified that she did not know the whereabouts of one Nellie Cash and could not help the petitioners to find Cash; that she had not communicated with Cash; and that Cash was not residing at the home of one Rae in Plymouth. In fact Bertha Stephens Lampron did know the whereabouts of Nellie Cash and had written to her and knew that she "was secreted" at the residence of Rae. Nellie Cash had been the companion, nurse, and housekeeper of the testatrix and would have been an important witness and "would have testified to facts which would have established" that the said alleged will was invalid and fraudulent. Some of the testimony of Bertha Stephens Lampron was false and fraudulent. "Bertha Stephens Lampron, her husband one John Lampron, one Lucy C. Rae, and others, . . . combined and conspired together to commit a contempt" of court and "to interfere with the administration of justice" and pursuant to this conspiracy "they did conceal and secrete the said Nellie Cash and they consciously practised an imposition on the court and by false representations and pretences and by the false testimony aforesaid, did prevent your petitioners from summonsing [*sic*] her and from having her appear as a witness, and

did commit a contempt of court." The petitioners made diligent efforts to locate and summon Cash, but because of the acts of the persons named, in combination, were prevented from doing so. By the false and fraudulent testimony of Bertha Stephens Lampron and by the "conspiracy" and acts pursuant thereto the petitioners "were deprived of a full opportunity to have the case properly heard," and Bertha Stephens Lampron, John Lampron and Lucy C. Rae "in combination, procured the entry of the aforesaid decree by fraud." The petitioners did not learn the truth concerning the whereabouts of Cash and "the existence and nature of said fraud and conspiracy" until a few days before the filing of the petition to vacate.

Upon close examination of the petition it is apparent that it contains clear allegations of false testimony by Bertha Stephens Lampron as to her lack of knowledge of the whereabouts of the potential witness Cash, and that it further contains a series of more or less indefinite allegations of "fraud," "combination," and "conspiracy" by the respondents named, as a result of which it is alleged that the witness was "secreted," so that the petitioners lost the benefit of important and decisive testimony. Nothing more of substance can be spelled out of the petition. It may well be doubted whether the allegations of the series last mentioned are not too general in their terms, and whether they contain sufficient statements of particular facts to withstand a demurrer. But for the purposes of this decision we assume that the petition is adequate in form.

It is well settled that for reasons of public policy a final decree will not be vacated on the ground that incorrect findings of fact as to matters in issue were brought about by perjured testimony given by one of the parties at the hearing, or knowingly procured by him. The reasons for this rule have been fully stated and need not be repeated. *Zeitlin* v. *Zeitlin*, 202 Mass. 205. *Boyd* v. *Boyd*, 226 Mass. 542. *Renwick* v. *Macomber*, 233 Mass. 530.

If the giving of perjured testimony leading to incorrect findings will not suffice as a ground of revocation, it is

difficult to see why the secreting of a witness having the same result should be placed in a different category. In each instance the wrong done produces incorrect findings by the court upon matters within its jurisdiction and actually heard and determined. The latter instance, as well as the former, falls within the statement in *Zeitlin* v. *Zeitlin*, 202 Mass. 205, at page 207, that "It is in the interests of justice that, after a trial and final judgment in a case, the matters heard and adjudicated shall not be opened for a further hearing because of a supposed error in the determination of facts by the tribunal that heard the evidence." In *Renwick* v. *Macomber*, 233 Mass. 530, 534, this court said, "The suppression or concealment of material facts as distinguished from the introduction of false and fabricated testimony does not, and in principle should not, change the accepted rule of public policy that litigation should cease when parties have had a day in court." *Fuller* v. *Fuller*, 261 Mass. 82, 85. *Pepper* v. *Old Colony Trust Co.* 262 Mass. 570. *Kelley* v. *Peters*, 299 Mass. 166, 171, 172. *Chagnon* v. *Chagnon*, 300 Mass. 309, 311. See *Wright* v. *Macomber*, 239 Mass. 98; *Burgess* v. *Burgess*, 256 Mass. 99, 100; *Sullivan* v. *Sullivan*, 266 Mass. 228, 229; *Holyoke National Bank* v. *Dulitzky*, 273 Mass. 125, 127.

The fraud here alleged was not "extrinsic or collateral to the matter tried" in the sense in which that expression has been used in cases of this kind. *Zeitlin* v. *Zeitlin*, 202 Mass. 205, 207. It entered directly into issues that have been fully tried. The gist of the petitioners' complaint is simply that those issues were wrongly determined because some of the evidence was kept away. The case is, we think, to be classed with those already cited rather than with *Sampson* v. *Sampson*, 223 Mass. 451, 462, or with *Parsekian* v. *Oynoian*, 299 Mass. 543. See *Greene* v. *Greene*, 2 Gray, 361; *Edson* v. *Edson*, 108 Mass. 590; *Gale* v. *Nickerson*, 144 Mass. 415, 419; *Tucker* v. *Fisk*, 154 Mass. 574; *Keyes* v. *Brackett*, 187 Mass. 306.

This case does not come within any of the exceptions to the general rule enumerated in *McLaughlin* v. *Feerick*, 276 Mass. 180, 183. It is to be observed that the petition con-

tains no allegations of newly discovered evidence (see *Hilton* v. *Hopkins*, 275 Mass. 59, 63, 64) or of any of the other usual grounds upon which a bill of review may be maintained in a suit in equity. *Boston & Maine Railroad* v. *Greenfield,* 253 Mass. 391, 397. See *Eldridge* v. *Eldridge,* 278 Mass. 309, 312; *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 153. A party is not commonly justified in depending upon his opponent to locate his witnesses for him, and if the petitioners really desired the attendance of Nellie Cash as a witness and after proper effort could not summon her, their remedy was to move for a postponement of the original hearing. This is true even if she had been "secreted" by the respondents. *Holbrook* v. *Holbrook,* 114 Mass. 568.

*Decrees affirmed.*