CHARMAINE HOLSINGER *vs.* JERRY LEE HOLSINGER.

Norfolk. November 6, 1969. — February 5, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Divorce*, Separation agreement, Alimony. *Contract*, Separation agreement. *Equity Jurisdiction*, Plaintiff's clean hands.

Respecting a paragraph in a marital settlement agreement providing that the husband should pay $600 "per month", payable on the first day of each month and continuing for a period of five years, that the wife was "capable, while in good health, of engaging in her profession as a school teacher," and that when such "payment provisions . . . when combined with earnings secured by . . . [the wife] from her employment exceed the sum of" $12,500 "per year" "the payment provisions . . . shall be reduced in a ratio that obligates . . . [the husband] to pay only that portion of $600 per month which when combined with the earnings of . . . [the wife] does not exceed $12,500 per year," but not setting out any method for computing reduced monthly payments, it was held that the parties intended that the husband should pay the wife $600 a month until such time as she was certain of receiving a salary which in combination with the husband's payments equalled $12,500 in a fiscal year, that the wife was obligated to notify her husband of her salary only when her combined annual income reached that sum, and that after such notification during one fiscal year the husband should not be required to make further payments until the next fiscal year. [7–8]

At the hearing of a petition under G. L. c. 208, § 35, as amended by St. 1950, c. 57, to enforce a foreign decree of divorce incorporating a marital settlement agreement which provided for a stated monthly support payment by the respondent to the petitioner as reduced by her earnings when employed, no facts were shown with respect to the petitioner's failure to inform the respondent about her employment, which commenced after the respondent deliberately began paying less than the stated monthly amounts, to justify a conclusion by the trial judge that the petitioner did not "come into Court with clean hands," and a decree dismissing the petition was reversed. [8–9]

Holsinger *v.* Holsinger.

PETITION filed in the Probate Court for the county of Norfolk on April 5, 1968.

The case was heard by *Reynolds*, J.

*Francis X. Kiley* for the petitioner.

*Edmund M. Hurley* for the respondent.

SPIEGEL, J. This is a petition in equity brought in the Probate Court under G. L. c. 208, § 35 (as amended by St. 1950, c. 57), seeking to enforce a California decree regarding alimony allegedly due the petitioner. A decree was entered dismissing the petition, "with prejudice and without costs to either party," from which the petitioner has appealed. The trial judge made a "Report of the Material Facts," and the evidence is reported.

We state pertinent facts found by the judge. On March 24, 1967, the petitioner and the respondent entered into a marital settlement agreement (agreement) "which . . . was later made part of the California decree." The agreement (par. 7) obligated the respondent to pay the petitioner $600 a month for her support for a period of five years from April 1, 1967. However, if the petitioner's earnings from her employment combined with the support payments exceeded $12,500 a year, the agreement provided that the respondent's obligation would be to pay only that part of $600 a month which combined "with the earnings of . . . [the petitioner] does not exceed $12,500 per year."

The agreement was made a part of the decree and the parties were ordered to comply with all of the "executory provisions of said agreement." A final judgment of divorce was entered on April 25, 1968. The respondent made his last alimony payment in October, 1967, "and . . . has made payments totalling $2400 to date."

The petitioner "has had no correspondence with her ex-husband since the divorce."[1] Since August, 1967, the petitioner has been employed as a teacher by the State of Indiana and has received a monthly salary of $672. "On

---

[1] Although the petitioner admitted that she did not personally communicate with the respondent, there was evidence that the respondent had been informed by the petitioner's attorney that she had an income producing job.

that basis her yearly earnings . . . would amount to approximately $8,064; that, added to respondent's per annum obligation of $7200 would total $15,264 yearly." "[I]t appears that it was the intention of the parties that if the petitioner had a total weekly income in excess of approximately $240 the respondent's burden of contributing thereto should be reduced accordingly.  The petitioner, since August 1967, has had an accrued gross income of approximately $291 per week and she has neglected to inform the respondent of this change of her situation, which change . . . in light of their support agreement, directly affected the obligation of the respondent.  In fact, the petitioner has continued to conceal the fact of her employment from the respondent up to and including the time she filed her present petition. That petition itself prays for payment of the full $600 per month without reference to the petitioner's employment, which clearly affects the amounts, if any, now due from the respondent under the decree above referred to."

The judge concluded that "there is a very high degree of connection here between the respondent's conduct toward the petitioner and the subject matter of this suit.  The inequity clearly and directly affects the basic cause of the action and [is] so connected with the subject matter in litigation that it affects the equitable relation subsisting between the parties.  The petitioner is not in any position justly to complain, as she does not come into Court with clean hands respecting the precise subject as to which she invokes relief, nor has she complied with the maxim that he who seeks equity must do equity."  As a "matter of discretion" the judge "dismissed the petition and denied her equitable relief."

It is well established that "[i]t is our obligation to review the evidence and reach a decision in accordance with our own reasoning and understanding, giving due weight to the findings of the trial judge, which we will not reverse unless they are plainly wrong, and finding for ourselves any additional facts [which] we believe to be justified by the evidence." *Petition for Revocation of a Decree for Adoption*

*of a Minor,* 345 Mass. 663, 669. *Berry* v. *Kyes,* 304 Mass. 56, 57–58. *Young* v. *Paquette,* 341 Mass. 67, 70. *O'Brien* v. *Wellesley College,* 346 Mass. 162, 170.

We have made a careful examination of the record and are unable to discern any basis for the conclusion of the judge that the petitioner "since August 1967, has had an accrued gross income of . . . $291 per week." The evidence does not support this conclusion. In attempting to determine by what means the judge arrived at the figure of $291 a week we conclude that he probably added the petitioner's monthly income of $672 to $600 a month the respondent was obligated to pay, multiplied it by twelve and then divided that sum by fifty-two.[2] We believe this method of computation was erroneous. The agreement required that the respondent make the alimony payments on the first day of each month "starting on the 1st day of April, 1967[3] and continuing for a period of five (5) years." The respondent made the following payments totaling $2,248.91: May 1, 1967 — $600, May 22, 1967 — $453.91, July 10, 1967 — $250, August 1, 1967 — $245, August 15, 1967 — $100, August 30, 1967 — $300, and October 23, 1967 — $300. The judge in determining that the respondent made payments totaling $2,400 included a check for $158.34 payable to the American Oil Company. This figure is incorrect because there is nothing in the record to indicate that the petitioner had any connection with the American Oil Company.

The respondent's check for $300 in October, 1967, was merely a payment towards the amount payable on August 1, 1967, at which time the respondent still owed the petitioner

[2] $\begin{array}{r} \$ \quad 600 \\ +672 \\ \hline 1,272 \\ \times 12 \\ \hline \$15,264 \end{array}$  $\begin{array}{r} \$ \quad 293 \\ \hline 52)\overline{\$15,264} \end{array}$

We assume that the judge made this computation even though the result would be an accrued weekly income of $293, instead of $291.

[3] The payment for the month of April was included in the settlement agreement.

$851.09.[4] After the October payment the respondent still owed the petitioner $151.09[5] on the August obligation. The respondent by his own admission stopped making alimony payments after the payment he made in October. Therefore, the finding of the judge that the petitioner had a weekly income of $291 was erroneous.

It is difficult to reconcile the obvious inconsistencies in par. 7 of the agreement and arrive at a conclusion which would reveal the precise intentions of the parties. Paragraph 7 states: "We agree that JERRY LEE HOLSINGER, in fulfillment of his obligation under this integrated agreement shall pay to CHARMAINE HOLSINGER the amount of Six Hundred Dollars . . . *per month*, payable on the 1st day of each month, starting on the 1st day of April, 1967, and continuing for a period of five (5) years from said 1st day of April, 1967, unless JERRY LEE HOLSINGER dies or CHARMAINE HOLSINGER remarries. In the event of the remarriage of said CHARMAINE HOLSINGER within two years from the date of the entry of an Interlocutory decree of divorce in the divorce

---

[4] On August 1, 1967, the respondent was already $496.09 in arrears in his payments.

| Amounts owed: | | | Amounts paid: | | |
|---|---|---|---|---|---|
| May 1 — | $ | 600 | May 1 — | $ | 600.00 |
| June 1 — | | 600 | May 22 — | | 453.91 |
| July 1 — | | 600 | July 10— | | 250.00 |
| Total | $1,800 | | | | $1,303.91 |
| Amount due: | | $1,800.00 | | | |
| Amount paid: | | 1,303.91 | | | |
| | | $ 496.09 | | | |

On August 1, 1967, the respondent made a payment of $245, leaving $851.09 still due.

| Prior arrearage: | $496.09 | |
|---|---|---|
| less August 1 payment: | 245.00 | |
| | $251.09 | amount in arrears |
| plus August 1 obligation: | 600.00 | |
| | $851.09 | amount in arrears as of August 1, 1967 |

[5] Amount due May 1, 1967, through August 1, 1967    $2,400.00
Less payments    2,248.91

Amount owed on August 1 obligation after the    $ 151.09
October 23 payment.

action now pending in the Superior Court of the County of Santa Barbara, then and in that event payments under this Paragraph shall cease and JERRY LEE HOLSINGER shall pay to CHARMAINE HOLSINGER the sum of Five Thousand Dollars . . . forthwith. It is further agreed by and between the parties hereto that CHARMAINE HOLSINGER is capable, while in good health, of engaging in her profession as a school teacher and it is further agreed that when the payment provisions of this Paragraph when combined with earnings secured by CHARMAINE HOLSINGER from her employment exceed the sum of *Twelve Thousand Five Hundred Dollars . . . per year* . . . the payment provisions herein detailed shall be reduced in a ratio that obligates JERRY LEE HOLSINGER to pay only that portion of $600.00 *per month* which when combined with the earnings of CHARMAINE HOLSINGER does not exceed $12,500.00 *per year*" (emphasis supplied).

Although par. 7 provides that the respondent could reduce his *monthly* support payments to the petitioner if her total *annual* income from salary and payments exceeded $12,500, it does not set out a method for computing the reduced payments. The respondent contends and the judge held "that if the petitioner had a total *weekly* income in excess of approximately $240, the respondent's burden of contributing thereto should be reduced accordingly" (emphasis supplied).

Paragraph 7 makes no reference to "*weekly*" income and indeed nowhere in the agreement is there any reference to "*weekly*" income. With regard to the *total* income of the petitioner par. 7 only refers to the "sum of Twelve Thousand Five Hundred Dollars . . . *per year*" (emphasis supplied). Moreover, the payment provisions of this paragraph appear to us to be geared toward reducing the *monthly* payments which the respondent was obliged to make.

In construing par. 7, it appears that the judge upheld the respondent's contention that if the petitioner had a position in which her salary, in combination with the respondent's monthly payments, might exceed $12,500 annually, the respondent would be entitled, immediately after

the petitioner commenced her employment, to reduce his monthly payments. This necessarily would be based on the assumption that the petitioner would work an entire year. We think that the agreement does not substantiate such an assumption. A provision in the agreement contemplates the possibility of illness of the petitioner. This is evidenced by the language in par. 7 referring to the "good health" of the petitioner. Under the judge's interpretation of this paragraph, if the petitioner became ill the respondent would be under no obligation to make up the amounts by which he had reduced his monthly payments in anticipation of the petitioner receiving a combined income of $12,500. Clearly, the maximum monthly payment required by the agreement is $600. The adoption of the judge's interpretation of par. 7 would result in the respondent reducing his monthly payments long before it was determined whether the combination of the petitioner's salary and the respondent's monthly payments would, in fact, exceed $12,500.

Because of the ambiguities in par. 7 we are obliged to interpret the paragraph so as to effectuate the intent of the parties. We are of opinion that the parties by the use of the phrase "when the payment provisions of this Paragraph . . . combined with earnings secured by . . . [the petitioner] from her employment exceed . . . Twelve Thousand Five Hundred Dollars . . . per year . . . the payment provisions herein detailed shall be reduced" intended that the respondent pay the petitioner $600 a month until such time as she is certain of receiving a salary which in combination with the respondent's payments equals $12,500 in a fiscal year. We believe that the petitioner is obligated to inform the respondent of her salary only when her combined annual income reaches the sum of $12,500. After such notification during one fiscal year the respondent should not be required to make further payments until the next fiscal year (April 1 to and including March 31 of the following year). This would enable the petitioner to receive the certain sum of $12,500, a combination of earnings and payments, and would have the net result of reducing the respondent's

monthly payments by providing a shorter payment period.[6]
If at the end of the fiscal year the petitioner shall have received a combined income in excess of $12,500, the respondent shall be entitled to be credited for the amount of the excess.

In 1967 and 1968, prior to the time the petition was brought (April 5, 1968), the petitioner had not received $12,500 annually. Consequently we are of opinion that the petitioner did not violate any duty incumbent upon her.

There is no doubt that the parties entered into a legally binding agreement which was to survive a decree of divorce. See *Hills* v. *Shearer*, 355 Mass. 405, 408. The respondent, in violation of the terms of the agreement, deliberately stopped making alimony payments. When questioned as to why he stopped, he said, "Well, I think it is a lot of money. . . . I simply couldn't afford to keep them up each month." However, we note that there was evidence that immediately prior to the commencement of this suit, an offer of $50,000 was "relayed" to the petitioner by the respondent to purchase certain shares of stock which she had received "as part of . . . the settlement."

Even if we assume that under the agreement the petitioner was under an obligation to inform the respondent of the estimated income from her employment, in these circumstances she was not obliged to do so because the respondent had broken the agreement prior to the petitioner accepting employment.[7]

We do not believe that the facts in this case justify the conclusion of the judge that the petitioner "does not come into Court with clean hands." See *MacCormac* v. *Flynn*, 313 Mass. 547, 550; *Fisher* v. *Fisher*, 349 Mass. 675, 677. To invoke this doctrine would be to reward the respondent

---

[6] It is obvious that any reduction in the number of monthly payments that the respondent is obligated to make during a fiscal year necessarily results in a proportionate reduction in his monthly payments based on a fiscal year payment schedule.

[7] There was testimony that the petitioner commenced working in August, 1967.

by permitting him to benefit from his deliberate breach of the agreement.

The decree dismissing the petition is reversed with costs to the petitioner in accordance with par. 17 of the agreement.[8] The case is remanded to the Probate Court where a decree is to be entered consistent with this opinion.

*So ordered.*

---

[8] Paragraph 17 reads as follows: "It is agreed that the payments provided for in Paragraph 14 shall be, and are, in full satisfaction of any and all obligations of JERRY LEE HOLSINGER for attorney fees and costs in connection with this agreement and any divorce action, provided, however, that if it shall hereafter be necessary for CHARMAINE HOLSINGER to employ counsel to enforce this instrument or to take any other action not herein referred to, she . . . [reserves] the right to apply to a Court of competent jurisdiction for such attorney's fees and costs as she may be entitled to and JERRY LEE HOLSINGER agrees to pay reasonable fees and costs in this event."