ARNOLD W. OLSSON *vs.* CHRISTINE D. WAITE.

Worcester.    May 6, 1977. — October 28, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Probate Court,* Revocation of decree.    *Will,* Allowance.

Evidence at hearings on a petition for allowance of a will supported the
    judge's finding that the will had been torn up by the testatrix with
    the intention of revoking it. [518-521]
On consolidated appeals by the proponent of a will from a decree dis-
    allowing his petition for probate of the will and by the daughter of
    the deceased from a subsequent decree vacating the decree disallow-
    ing the will and from a third decree dismissing a petition to vacate
    the second, the proponent's failure to argue his appeal from the de-
    cree disallowing the will constituted a waiver of his appeal. [521-524]
A probate judge erred in vacating a decree disallowing a will where the
    basis for the relief was that the proponent's lawyer had failed to in-
    troduce certain available evidence. [524-532]
BRAUCHER, J., dissenting, would dismiss the appeals on the ground that
    nothing was properly before the court. [534-535]

PETITION filed in the Probate Court for the county of
Worcester on June 8, 1972.

The case was heard by *Wahlstrom, J.*

After review by the Appeals Court, the Supreme Judi-
cial Court granted leave to obtain further appellate review.

*Charles B. Swartwood, III*, for Arnold W. Olsson.

*John A. Romano* for Christine D. Waite.

QUIRICO, J.    This case presents questions arising out of
three decrees entered by a judge of the Probate Court with
reference to the estate of the late Ann Francis. On October
17, 1972, the judge entered a decree disallowing the peti-
tion for the probate of the purported will of Ann Francis,
the basis for the disallowance being an express finding that
the named testatrix had destroyed the will with the inten-
tion of revoking it. On November 3, 1972, Mr. Arnold W.
Olsson, the proponent and sole beneficiary under that will,

appealed from that decree. On November 16, 1972, Mr. Olsson filed a motion to vacate that decree, and on December 1, 1972, the judge, after a hearing, entered a new decree vacating his decree of October 17, 1972. On December 6, 1972, Christine D. Waite, the daughter and sole heir at law of Ann Francis, and Anthony Francis, the divorced husband of Ann Francis, filed a petition to vacate the decree of December 1, 1972, and after a hearing held thereon the judge entered a third decree on December 18, 1972, dismissing the petition. Waite and Francis appealed from the decrees of December 1 and of December 18, 1972. Francis withdrew his appeal on September 13, 1973.

The appeals were entered in and argued before the Appeals Court. On February 9, 1977, that court rendered its decision affirming the decree of October 17, 1972, that had disallowed the will; reversing the decree of December 1, 1972, and treating the appeal from the decree of December 18, 1972, as waived and therefore dismissing it. *Olsson* v. *Waite,* 5 Mass. App. Ct. 93 (1977). On the application of Olsson, we granted further appellate review. G. L. c. 211A, § 11.

Having further reviewed the issues raised by these appeals, we reach the same result as did the Appeals Court, and for substantially the same reasons stated in the opinion of that court.

1. *Decree of October 17, 1972.* Mr. Olsson's appeal from the decree of October 17, 1972, disallowing the will of Ann Francis for probate is before us on the basis of the petition for probate, the transcript of the evidence presented at the hearing on the petition, the decree disallowing the will, Mr. Olsson's appeal therefrom, and a report of the material facts found by the judge as the basis for that decree.

We summarize the material facts found by the judge to the extent that they are relevant to his disallowance of the will. Ann Francis and her husband had had a long history of marital problems which culminated in his obtaining a decree of divorce nisi on November 10, 1971. This

came after a strongly contested hearing at which their daughter, Christine D. Waite, testified in favor of her father, leaving the mother embittered against her. On January 13, 1972, Ann Francis executed a will naming as the executor and sole beneficiary thereunder Mr. Olsson, who had been a friend of both Mr. and Mrs. Francis for some years. The will was drawn by a lawyer other than Mr. Olsson. The lawyer had Ann Francis execute the original will which he gave her and also a carbon copy of the will which he kept in his files. The will expressly stated that nothing was being left to the husband or daughter.

The divorce decree against Ann Francis became absolute on May 10, 1972. On May 23, 1972, Ann Francis said, in the presence of her daughter and her former husband: "I have torn up my will." The judge found that this indicated "that she wanted her daughter to have all her estate by inheritance, the divorce now being absolute and the divorced husband now having no claim to share in her estate."

Ann Francis committed suicide on June 2, 1972, in the house where she lived. In the several days following, her former husband, Mr. Olsson and others searched the house for the original will but they did not find it. Mr. Olsson then obtained the executed carbon copy of the will from the lawyer who had drawn it, and on June 8, 1972, he filed a petition for its allowance and for his appointment as executor. Hearings were held on this petition on October 11 and on October 16, 1972, at which the judge received evidence consisting almost entirely of the oral testimony of the lawyer who drew the will and the other two attesting witnesses thereto, a neighbor of Ann Francis, Mr. Olsson, one of his secretaries, the daughter, and the former husband of Ann Francis. As already noted above, on October 17, 1972, the judge entered a decree stating that the petition was "disallowed, this so-called will being a copy of the revoked original will." Mr. Olsson filed a claim of appeal from that decree on November 3, 1972. On November 29, 1972, the judge filed his report of ma-

terial facts which we have summarized in part above. The report concluded as follows: "I find that the testator revoked the will by destroying it and that this is carried over and makes it necessary to disallow the copy as her last will and testament.... I gave a great deal of thought as to whether some other person had destroyed the will so that the errant daughter would inherit but I find no evidence to warrant even the thought."

If Mr. Olsson's appeal from the decree of October 17, 1972, disallowing the will is properly before us, there is no question about the applicable standard of our review thereof when, as here, we have before us all the evidence which the judge had before him and, in addition thereto, his findings. "It is our obligation to review the evidence and reach a decision in accordance with our own reasoning and understanding, giving due weight to the findings of the trial judge, which we will not reverse unless they are plainly wrong, and finding for ourselves any additional facts we believe to be justified by the evidence." *Petition for Revocation of a Decree for Adoption of a Minor*, 345 Mass. 663, 669 (1963). *Holsinger v. Holsinger*, 357 Mass. 1, 3-4 (1970). *O'Brien v. Wellesley College*, 346 Mass. 162, 170 (1963). *Grossman v. Grossman*, 343 Mass. 565, 566 (1962). *Shattuck v. Wood Memorial Home, Inc.*, 319 Mass. 444, 445 (1946). *Osborne v. Craig*, 251 Mass. 169, 172 (1925). The citations of numerous additional decisions by this court on this point are collected in the footnotes to 2 G. Newhall, Settlement of Estates § 301 (4th ed. 1958), and it is unnecessary to reproduce the list in this opinion.

In applying this general rule to this case we start with the fact, obvious from a reading of the transcript, that there was evidence which, if believed, permitted the judge to find that the original will had been torn up by Ann Francis with the intention of revoking it. Therefore, "the crucial question for our decision is whether we can say that the finding of ... [such tearing and revocation] was plainly wrong.... The question is not what finding we

ourselves would have made on the same evidence. The case is one in which widely differing inferences could be drawn from the evidence, and it is not one where the drawing of inferences can be separated from the evaluation of the testimony itself. . . . Most of the evidence was given orally. The value of the testimony of the witnesses depended in great measure upon their appearance and their manner of testifying on the stand. In such a case we must give full recognition to the advantage possessed by the trial judge, who saw and heard the witnesses" (citations omitted). *Goddard* v. *Dupree*, 322 Mass. 247, 248 (1948).

We conclude that the finding of the judge that the will had been torn up by Ann Francis with the intention of revoking it was not plainly wrong, and that the entry of the decree of October 17, 1972, disallowing the will was not error.

The Appeals Court noted that Mr. Olsson failed to argue his appeal from the decree of October 17, 1972, in his brief before that court. *Olsson* v. *Waite*, 5 Mass. App. Ct. 93, 95 (1977). That is a separate and independent reason for reaching the same result which we have reached above, except that the affirmance of that decree would be based on the familiar rule that the failure to argue an issue is to be treated as a waiver of the appeal thereon. This would be true whether the appeal procedure were governed by the more recent Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), or by the earlier versions of S.J.C. Rule 1:13, as amended, 366 Mass. 853 (1975), or Rule 1:13 of the Appeals Court, as amended effective February 27, 1975, 3 Mass. App. Ct. 801 (1975). *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 716 (1974). *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 126-127 (1971). *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958).

Before the Appeals Court and before this court, counsel for Mr. Olsson took the position that the only matters properly pending for appellate review were (a) the decree of December 1, 1972, which purported to vacate the decree of October 17, 1972, and (b) the decree of December 18,

1972, dismissing the petition to vacate the decree of December 1, 1972. Having taken that position, we think mistakenly, Mr. Olsson did not cover the matter of his own appeal from the decree of October 17, 1972, in his brief. He apparently asked the Appeals Court to permit him to file a further brief on that point in the event that the court concluded, as it did, that the judge was wrong in vacating that decree. The Appeals Court denied that request in language which we quote in the footnote below,[1] and concluded that, in any event, there was no merit to his appeal from the decree of October 17, 1972.

When appearing before this court Mr. Olsson relied on the same brief which he had filed in the Appeals Court and again requested leave to file a brief on his appeal from the decree of October 17, 1972, if the court reached that issue. He based the request on the contentions (a) that since that decree which was adverse to him was vacated by the decree of December 1, 1972, he was no longer aggrieved by the decree of October 17, 1972, (b) that he was entitled to rely on the superseding decree of December 1, 1972, and (c) that the decree of December 1, 1972, was interlocutory only and that Waite's appeal therefrom could not be considered properly by an appellate court until after the Probate Court had held further hearings and again had made a decision on the allowance of the will. The record of the exact proceedings in this case does not appear to support these contentions.

The following is the chronology of events as they relate to Mr. Olsson's failure to date to file a brief on his appeal

---

[1] The Appeals Court said in *Olsson* v. *Waite,* 5 Mass. App. Ct. 93, 95 (1977): "We have considered the proponent's unusual request that he be permitted, in the event we should reach the conclusion we have in fact reached on the contestant's appeals, to file another brief arguing his own appeal. It is most unlikely that we should have allowed such a request in any event, but in this case it is not even made to appear that the appeal presents a meritorious issue. It is plain that the decree is adequately supported by the judge's findings, particularly those concerning the decedent's revocation of the will by destroying it, and that the crucial findings are supported by evidence to which the proponent took no exception. The request is denied."

from the decree of October 17, 1972, and to his request that he be allowed to file one now. He appealed from that decree on November 3, 1972. On November 16, 1972, he filed a motion to vacate that decree. On December 1, 1972, the motion was heard and allowed in open court at the close of the hearing. In allowing the motion the judge said: "I will revoke the decree and put the case down for an early hearing and get it over with. But in the meantime . . . I think you should dismiss your appeal . . . [b]ecause I think that stands in the way," to which Mr. Olsson replied: "That will be done." On that same date the judge entered a new decree vacating the decree of October 17, 1972. On December 6, 1972, Waite filed a petition to vacate the decree of December 1, 1972. The petition was heard on December 15, 1972, and dismissed on December 18, 1972. On January 10, 1973, Mr. Olsson filed a waiver and withdrawal of the appeal he had filed on November 3, 1972. On October 15, 1973, Mr. Olsson filed a motion "that he be permitted to withdraw his waiver of appeal and [that] said waiver be stricken from the court records and his claim of appeal dated November 3, 1972 be revived and pending on the records of the court." This was assented to by Waite's counsel and was allowed on the date filed. On April 26, 1974, the parties filed a joint motion that Waite's "Appeals from Decrees of the Court dated December 1, 1972 and December 18, 1972 be consolidated for appeal to and hearing in the Supreme Judicial Court with the appeal of Arnold Olsson dated Nov. 3, 1972," and the motion was allowed on October 24, 1974.

The consolidated appeals were duly entered in the Appeals Court in 1975, where they were argued on November 12, 1976, and decided on February 9, 1977. We then allowed further appellate review and the appeals were argued before us on May 6, 1977. As of the latter date, which was about four and one-half years after the appeals had been claimed, three and one-half years after the Olsson appeal had been revived, and two and one-half years after the Olsson and Waite appeals had been consolidated for hearing before an appellate court, Mr. Olsson had neither

filed, nor offered for filing, any brief on his own appeal. To this date, we have been given no satisfactory explanation for his failure to brief his own appeal. We can surmise that the failure was related to his insistence that the issue was not ripe for appeal, but that requires us to ignore the obvious fact that his appeal was presented to the Appeals Court as the result of his own action in having the appeal "revived" after a prior waiver thereof, and in having it consolidated with the Waite appeals then being processed. We shall not further delay the administration of the estate of Ann Francis, who died more than five years ago, by permitting an appellant to brief different appellate issues in consecutive instalments at his convenience.

2. *Decree of December 1, 1972.* On November 16, 1972, Mr. Olsson filed a motion in the Probate Court asking that the decree of October 17, 1972, disallowing the will of Ann Francis be vacated and that the matter be set down for rehearing. We summarize the allegations in the motion. Mr. Olsson was the executor and sole legatee under the will. Although he was represented by counsel at the hearing on the allowance of the will, his knowledge of the facts of the case made it essential that he be present with his counsel to participate "not only as a witness but also in monitoring the case at counsel table to assure the orderly and complete presentation of available evidence ... [and for] the effective presentation of his case." He was present throughout the first day of trial on October 11, 1972, and was examined and cross-examined as a witness on that day. The hearing was then adjourned to October 16, 1972, on which date he was scheduled to start the trial in the Superior Court, Worcester County, of a case in which he represented a defendant charged with murder. A judge of the Superior Court denied his request for a postponement of the murder trial to enable him to complete the hearing in the Probate Court. His unavailability and the reason therefor were reported to the judge of the Probate Court by his then counsel, Mr. Jacob Y. Young, "but, due to the inadvertence and mistake of counsel, this circumstance was not made the basis for a formal request for a contin-

uance of the hearing under the petition for probate of the Francis Will." The motion further alleged that Mr. Olsson's absence from the hearing in the Probate Court on October 16, 1972, "materially handicapped his counsel in the presentation of his case, by reason of which significant and material evidence by the petitioner, bearing on the issues before the court in that case, was not introduced, and cross-examination of testimony introduced by the contestant was made without the benefit of ... [Mr. Olsson's] comment and counsel and of his familiarity of the facts of the case." The allegation of the motion was that "without his fault ... [Mr. Olsson] was deprived of an adequate presentation of his case and the Will contest was heard and determined by the probate court, without the introduction or bringing before the court of material and significant evidence bearing on the key issues of fact therein, whereby the petitioner has been deprived, without his fault, of the fair and adequate trial to which he is entitled at law."

In the filing and hearing of the motion summarized above, Mr. Olsson was represented by Mr. Francis H. George as successor counsel to Mr. Young. The motion was heard on December 1, 1972, and the evidence heard thereon was limited to the oral testimony of Mr. Young and his then former client, Mr. Olsson. At the close of the hearing the judge stated from the bench that the prior decree of October 17, 1972, disallowing the will of Ann Francis, was vacated, and a decree to that effect was entered on the same day. Waite's appeal from that decree is now before this court on the basis of the following: Mr. Olsson's motion filed November 16, 1972, for the revocation of the earlier decree of October 17, 1972, the transcript of the hearing on December 1, 1972, the decree of December 1, 1972, allowing Mr. Olsson's motion, and Waite's appeal therefrom.[2] Waite seasonably requested the judge to make

[2] Two affidavits which appear to have been filed in the Probate Court by Mr. Olsson on November 22, 1972, but no copies of which were given to Waite's counsel, are intentionally excluded from the record on appeal at this point for reasons to be stated later in this opinion.

a report of material facts found by him in this matter, but the judge had been retired from office under the provisions of Part II, c. 3, art. 1, of the Constitution of the Commonwealth, as amended by art. 98 of the Amendments thereto, without having made such a report.

We have often said in a situation such as the present, where the evidence is reported but the judge has made no findings of fact, that "the decree imports a finding of every fact essential to its support. Our duty is to decide the case according to our own judgment, giving due weight to the findings, including those implied in the decree of the probate judge." *Bodman* v. *Martha's Vineyard Nat'l Bank,* 330 Mass. 125, 126 (1953), and cases cited. *Massa* v. *Stone,* 346 Mass. 67, 72 (1963). *Putnam* v. *Neubrand,* 329 Mass. 453, 456 (1952). *Bashaw* v. *Willett,* 327 Mass. 369, 370 (1951). In the present case we are unable to give "due weight to the findings ... implied in the decree" because the judge, as will be seen later, had before him and considered, in entering the decree of December 1, 1972, the two affidavits mentioned in note 2, *supra.* We therefore decide this case according to our own judgment, making our own findings on the basis of the testimony of Mr. Young and Mr. Olsson. A brief summary of their testimony may help.

Mr. Young testified as follows. Mr. Olsson was present and available to testify at the hearing of October 11, 1972. Mr. Olsson did in fact testify, having been put on the stand by counsel for Waite, and was cross-examined by Mr. Young. He was also available as a witness on October 16, 1972, as the result of an arrangement made by Messrs. Young and Olsson with a judge of the Superior Court to release him from the murder trial whenever he was needed as a witness. Thereafter Mr. Young advised Mr. Olsson not to testify further and that he would call Mr. Olsson's secretary as a rebuttal witness. Mr. Olsson agreed to that. On October 16 Mr. Young did call the secretary as a rebuttal witness. He informed the judge that Mr. Olsson was engaged in a murder trial but he did not ask for a continuance because he and his client had agreed that

it would not be necessary for the client to testify again.

Mr. Olsson testified as follows. He had been a practicing lawyer for almost twenty years. He and Mr. Young had conferred a number of times about the evidence and the manner in which it would be presented, but Mr. Young made the decisions as to whether or not Mr. Olsson would go on the stand. Mr. Olsson said of Mr. Young: "If he said it once he said it a dozen times; whenever I made a suggestion in relation to evidence to be presented he told me in no uncertain language, 'Listen, I'm the lawyer, now you're the client and I'll make the decisions and you'll listen to me.' At first I thought he was joking, but when he reiterated it so many times I knew he meant it." At one point Mr. Young told Mr. Olsson, "I might not put you on, you're too cocky." The two of them had discussions about taking the stand after October 11, 1972. Mr. Young told Mr. Olsson he would put him on the stand again, but he did not do so. When they met with the Superior Court judge who was to preside over the murder trial, the latter told them that if Mr. Olsson was needed as a witness he "might be able to spare him for a half an hour, but no more," and Mr. Young said, "Well, if I need him, I'll let you know." Mr. Young did not put Mr. Olsson back on the stand, nor did he ever ask the judge of the Probate Court for a continuance for that purpose, nor did Mr. Olsson ever make such a request. When Mr. Olsson later asked Mr. Young why he did not ask for a continuance so that Mr. Olsson could testify further, the answer was, "Well, I didn't think it was necessary, I don't think we needed you. I think we're all set." Mr. Olsson did not agree with that decision; he wanted a chance to testify to rebut some of the testimony by Waite and her father.

On the basis of our reading of the testimony of Messrs. Young and Olsson we find the following facts as they relate to the latter's motion to vacate the decree of October 17, 1972. Mr. Olsson, although himself a member of the bar, engaged Mr. Young to represent him in the probate of the will of Ann Francis. Mr. Young was an experienced trial lawyer, and one of his specialized areas of practice

was in matters before the Probate Court. Very early in their relationship, and often thereafter, Mr. Young informed Mr. Olsson that he, Mr. Young, was the lawyer who was handling the matter, and that he would make whatever decisions were required as to the conduct of the trial. Perhaps Mr. Olsson was not entirely happy about that, but he continued the relationship knowing and understanding the terms and conditions under which Mr. Young was representing him. There was some additional testimony which Mr. Olsson thought should be given to the judge on the allowance of the will, Mr. Young knew that, and he knew what the testimony was. Had Mr. Young desired to present the additional testimony, some of which would be from Mr. Olsson as a witness, it is probable that an accommodation could have been reached between the judges of the Probate Court and the Superior Court to make Mr. Olsson available to testify further in the will proceeding. All the evidence which Mr. Olsson now contends should have been, but was not, offered at the will hearing was known to him, and had been disclosed by him to Mr. Young before the hearing of October 11, 1972. Mr. Young made a decision, after considering the evidence which Mr. Olsson wanted to offer in rebuttal, that it was not necessary and that he would not offer it. Mr. Olsson acquiesced in that decision, and he made no attempt to do anything about it until November 16, 1972, one month after the date of the adverse decision on the allowance of the will.

This brings us to the basic question whether it was error for the judge, in the circumstances of this case, to enter the decree of December 1, 1972, vacating his earlier decree of October 17, 1972, disallowing the will. As both parties have argued, this question is controlled by the rules of practice governing proceedings in the Probate Court in effect at the time of the entry of the decrees appealed from. We hold that the judge's action was erroneous for the reasons hereinafter stated.

Many of our opinions on this subject start with the fol-

lowing statement of the basic applicable rule in *Zeitlin* v. *Zeitlin*, 202 Mass. 205, 207 (1909): "It is in the interests of justice that, after a trial and final judgment in a case, the matters heard and adjudicated shall not be opened for a further hearing because of a supposed error in the determination of facts by the tribunal that heard the evidence. A contention that some part of the material testimony was false might be made with plausibility in a large proportion of the cases that are tried. A contention that the prevailing party knowingly gave or procured false testimony, upon an issue involved, might be made and strongly supported in a great many cases. It is against public policy to open cases on no other ground than this." Although the above quoted language related to a case originally tried in the Superior Court, it was held in *Renwick* v. *Macomber*, 233 Mass. 530, 534 (1919), that it applied equally to decrees of the Probate Courts.

While frequently restating and adhering to the seemingly strict rule of the *Zeitlin* case, we have also frequently recognized and applied exceptions thereto. The question requiring our attention is whether the present case falls within any of these exceptions.

In *Goss* v. *Donnell*, 263 Mass. 521, 523-524 (1928), we said: "It now is settled that a court of probate has power to correct errors in its decrees arising out of fraud, or mistake, or want of jurisdiction, or for any reason adequate in law. Its power in this field is 'analogous to that of courts of common law to issue writs of review and of courts of equity to entertain bills of review ...,' " quoting from *Crocker* v. *Crocker*, 198 Mass. 401, 404-405 (1908). In *Agricultural Nat'l Bank* v. *Bernard*, 338 Mass. 54, 57 (1958), we said that "decrees of the Probate Courts may be modified or vacated in certain narrowly circumscribed situations ... [and] that a probate decree may be revoked or modified on petition for any reason that would warrant a bill of review in equity, but not for other reasons." *Tucker* v. *Bowen*, 354 Mass. 27, 32 (1968). *Stein* v. *Clark*, 326 Mass. 767, 769 (1951). *Royal* v. *Royal*, 324 Mass. 613,

618 (1949). *O'Sullivan* v. *Palmer,* 312 Mass. 240, 241 (1942). *Kennedy* v. *Simmons,* 308 Mass. 431, 432-433 (1941).

For a better understanding of what is meant by a "bill of review in equity" it is helpful to refer to this court's explanation thereof. In *Clapp* v. *Thaxter,* 7 Gray 384, 386 (1856), we said: "There can then, after final decree [in equity] and judgment thereon, be no reversal of the decree, except upon a bill of review. . . . A bill of review must be based upon one of two grounds: error in law, apparent upon the record; or the discovery of new facts, which could not have been used when the decree was passed." In *Mackay* v. *Brock,* 245 Mass. 131, 133-134 (1923), we said, "A writ of review commonly is granted only for matter of law apparent on the face of the record, for newly discovered evidence not reasonably susceptible of having been presented at the trial or for matter occurring since the decree." In *Boston & Me. R.R.* v. *Greenfield,* 253 Mass. 391, 397 (1925), we said: "A bill of review commonly is granted only (1) for error of law apparent on the record, (2) new evidence not susceptible of use at the trial and coming to light after the decree, and (3) new matter arising after the entry of the decree." *Nelson* v. *Bailey,* 303 Mass. 522, 524-525 (1939).

The grounds on which the judge gave Mr. Olsson relief by vacating the decree of October 17, 1972, do not qualify as grounds for relief under a bill of review. The relief was not based on any error of law apparent on the record. It was based on the ground that his lawyer failed to introduce some evidence which was then known and could have been offered — it was evidence susceptible of use at the trial and not something which came to light after the trial. The basis for the relief granted was not something which arose after the entry of the decree. Therefore, Mr. Olsson was entitled to no relief by any analogy to a bill of review in an equity suit. *Stein* v. *Clark,* 326 Mass. 767, 769 (1951).

We have held in some cases that a judge of a Probate Court may vacate a decree entered by default due to the

neglect of counsel to appear and answer for a party after being retained to do so. *Zani* v. *Zani,* 325 Mass. 134, 135 (1949). *Frechette* v. *Thibodeau,* 294 Mass. 51, 54-55 (1936). *Lovell* v. *Lovell,* 276 Mass. 10, 11-12 (1931). *Sullivan* v. *Sullivan,* 266 Mass. 228, 229-230 (1929). See *McEndy* v. *McEndy,* 318 Mass. 775, 776-777 (1945). However, this is not such a case.

We have also held in some cases that a Probate Court "may revoke a decree procured by fraud which induced the court to take a jurisdiction which it did not have ... [and that] it may revoke a decree where fraud has operated to deprive an interested party of his day in court." *Reynolds* v. *Remick,* 333 Mass. 1, 10 (1955). *Buckingham* v. *Alden,* 315 Mass. 383, 387 (1944). *Parsekian* v. *Oynoian,* 299 Mass. 543, 545-547 (1938). *McLaughlin* v. *Feerick,* 276 Mass. 180, 183 (1931). In *O'Brien* v. *Dwight,* 363 Mass. 256, 282-289 (1973), and *Jose* v. *Lyman,* 316 Mass. 271, 280 (1944), we upheld the revocation of decrees on the accounts of fiduciaries on the ground of their self-dealing with estate assets. In yet another line of decisions we have held that "[a] Probate Court has the power to correct manifest mistakes appearing upon the face of its records." *Theberge* v. *Howe,* 314 Mass. 22, 25 (1943), and cases cited. *W.M. Gullicksen Mfg. Co.* v. *MacNeil,* 347 Mass. 568, 573 (1964). *Dolan* v. *Roy,* 286 Mass. 519, 521 (1934). Clearly the present case does not come within any of these several exceptions to the basic rule against vacating final probate decrees except as the result of appellate review. See *Stephens* v. *Lampron,* 308 Mass. 50, 52-54 (1941), and cases cited.

The following statement in *Reynolds* v. *Remick, supra* at 9-10, summarizes much of what we have said above: "To justify revocation of decrees it is not enough to show that available evidence was not offered, that material contentions were not properly presented, or that the issues were not rightly decided.... [Citations omitted.] That fraud in the presentation of a case is not ground for revocation of a decree applies to Probate Courts, with the following exceptions. A court may correct a manifest error

in a decree. It may revoke a decree procured by fraud which induced the court to take a jurisdiction which it did not have. And it may revoke a decree where fraud has operated to deprive an interested party of his day in court."

The basis on which the judge vacated his decree of October 17, 1972, was that "available evidence was not offered" by Mr. Olsson's counsel. _Reynolds_ v. _Remick, supra_ at 9. The reason it was not offered is not because of any fraud, but because of counsel's judgment that it was not necessary. In _Kennedy_ v. _Simmons,_ 308 Mass. 431, 433 (1941), we said: "The Probate Court was not authorized to set aside the decree because the petitioner had failed to introduce available evidence to prove that the decedent was not domiciled in Millis or because the case was not properly presented." In _Holyoke Nat'l Bank_ v. _Dulitzky,_ 273 Mass. 125, 127 (1930), we said: "The fact that evidence existing at the time of the trial was not presented because of 'accident, mistake or misfortune' is not a reason for the revocation of the decree." In _Renwick_ v. _Macomber,_ 233 Mass. 530, 533-534 (1919), quoting in part from _Zeitlin_ v. _Zeitlin,_ 202 Mass. 205, 207 (1909), we said that neither " '[a] contention that the prevailing party knowingly gave or procured false testimony, upon an issue involved, . . .' [nor a contention that there was a] concealment of material facts . . . [should] change the accepted rule of public policy that litigation should cease when parties have had a day in court."

We conclude that it was error for the judge to have entered the decree of December 1, 1972, purporting thereby to vacate his earlier decree of October 17, 1972.

3. _Decree of December 18, 1972._   Although our conclusion above makes it unnecessary to consider at length Waite's appeal from the decree of December 18, 1972, we believe it appropriate that we make some observations thereon. In that decree the judge dismissed Waite's petition of December 6, 1972, which asked that the decree of December 1, 1972, be vacated. The basis for the petition was that on the latter date, and after the entry of the

decree of that date, Waite first learned that in entering that decree the judge had read and relied in part on statements contained in two affidavits which had been filed by Mr. Olsson in the Probate Court on November 22, 1972, without sending copies to Waite or her counsel. Waite first saw copies of the affidavits at the registry of probate, where she obtained copies of them at a cost of $25. It seems clear that during the hearing on December 1, 1972, and in entering the decree of that date the judge assumed that Waite or her counsel had been furnished with copies of the affidavits by Mr. Olsson or his counsel, but that had not been done.

Mr. Olsson argues through counsel that the applicable rules of practice then in effect required that a party filing a pleading send a copy to the other parties, but that it did not require the sending of copies of affidavits filed in support of allegations of facts on which pleadings are based. We do not deem it necessary to quote or discuss any rule then in effect on this subject. We hold it unacceptable that one party should place such information before a judge intending that he rely on it in a contested matter without furnishing a copy of it to the other parties. It is contrary to the basic rules of fairness governing litigation under our adversary system, and it is not to be countenanced regardless of any rule of court on the subject.

It is understandable that when a client elects to file pleadings or documents pro se, although represented by counsel, misunderstandings may arise. We recognize also that there was room for misunderstanding by reason of a colloquy between counsel at the hearing, when Waite's counsel hearing reference to an affidavit assumed it was to an affidavit of notice of marking. We are not required to try to pinpoint the responsibility for the mix-up. A judicial decision brought about by ex parte communications with the judge has no place in our adversary system.

4. *Conclusion.* The decree of October 17, 1972, is affirmed. The decree of December 1, 1972, is reversed. We take no action with reference to the decree of December 18, 1972, since the result sought in the part of the proceed-

ing involved therein has been accomplished in the two preceding sentences.

*So ordered.*

BRAUCHER, J. (dissenting). In my view nothing is properly before us, and the appeals should be dismissed. On January 10, 1973, Olsson filed a written waiver of his appeal from the decree of October 17, 1972, and that appeal could not be reinstated in October, 1973, by an agreement of the parties or an order of the trial court. G. L. c. 215, §§ 15, 29 (repealed by St. 1975, c. 400, § 61 and § 65, respectively, effective July 1, 1975). Cf. G. L. c. 231, § 134 (repealed by St. 1973, c. 1114, § 205, effective July 1, 1974); Mass. R. A. P. 14 (b), 29 (a), 365 Mass. 859, 877 (1974); *Tolman* v. *Tolman,* 224 Mass. 501, 504 (1916); *Boston* v. *Santosuosso,* 308 Mass. 202, 209 (1941). The decree of December 1, 1972, purported to revoke the prior decree; the judge said, "I will revoke the decree and put the case down for an early hearing and get it over with." Thus the second decree was interlocutory, and no appeal except one from a final decree can come presently to this court. *LaRaia* v. *LaRaia,* 329 Mass. 92, 93 (1952). *Slater* v. *Munroe,* 313 Mass. 538, 540 (1943). See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 467-471 (1975); *Giacobbe* v. *First Coolidge Corp.,* 367 Mass. 309, 312-314 (1975). The decree of December 18, 1972, did not change the posture of the case, and thus was also interlocutory.

I sympathize with the court's desire not to delay further the administration of the estate of a decedent who died more than five years ago. Hence I should not object to an expression of opinion on the questions presented, as in *Slater* v. *Munroe, supra,* so far as that can be done with assurance. I agree with the court's conclusion that the decree of December 1 cannot rest on the implied findings of the judge, since he relied on two affidavits filed by Olsson, and Waite had not been given copies of those affidavits. But I do not think it is sound procedure for

this court to make its own findings on the basis of a transcript of conflicting testimony, disregarding the affidavits and resolving questions of credibility. In my view a new hearing is required, as the judge intended.

As for the question whether the judge had power on December 1 to vacate the October 17 decree, I would reserve judgment until we have before us proper findings of fact. Olsson's appeal from the October 17 decree was pending December 1, and the motion to vacate might have been denied on that ground. *William* v. *Howard,* 330 Mass. 323, 324-325 (1953). But the judge said that Olsson should dismiss his appeal, and Olsson stated in open court that he would do so and later filed a written waiver. The effect of these events on the rules of such cases as *Zeitlin* v. *Zeitlin,* 202 Mass. 205, 207 (1909), and *Sullivan* v. *Sullivan,* 266 Mass. 228, 229-230 (1929), presents a novel question. See *O'Brien* v. *Dwight,* 363 Mass. 256, 285-289 (1973); *Waters* v. *Stickney,* 12 Allen 1, 15 (1866). The answer to that question may depend on the facts found, and I am not prepared to express an opinion on it in a case in which we have no jurisdiction.